### Seibert Houston v. The State.

#### No. 4739.   Decided January 16, 1918.

#### Rehearing overruled April 10, 1918.

**1.—Murder—Evidence—Moral Turpitude—Drunkenness.**

Proof that the witness was charged with a misdemeanor not involving moral turpitude is not admissible, and there was no error in excluding testimony that the witness had been arrested for drunkenness several times in the preceding six months, it not being contended that she was drunk at the time of the homicide.   Following Green v. State, 53 Texas Crim. Rep., 490, and other cases.

**2.—Same—Evidence—Exhibition of Knife—Deadly Weapon—Intent.**

Upon trial of murder there was no error in exhibiting the knife to the jury which was used in the killing of deceased, as it was not shown to be a deadly weapon per se, and was an element to be considered in determining the intent of defendant and other controverted facts.

**3.—Same—Evidence—Reputation of Deceased.**

Where, upon trial of murder, the evidence showed that the deceased bore the reputation of being a violent, dangerous, quarrelsome man, drunk or sober, there was no error in not permitting the defendant to show that the deceased, when under the influence of intoxicating liquor, had the reputation of such a character.

**4.—Same—Evidence—Character of Deceased.**

Upon trial of murder there was no error in not permitting the defendant to prove the general reputation of deceased as having a quarrelsome and fighting disposition, the court qualifying the bill of exceptions that he had permitted testimony of the reputation of deceased as a fighting and dangerous man, and this question was not disputed.

**5.—Same—Evidence—Argument of Counsel.**

Upon trial of murder there was no error in the argument of State's counsel that the defendant and his wife lived as husband and wife before they were married, the evidence showing that they were living in a house of ill-fame at the time of the homicide; besides, this argument was withdrawn by the charge of the court.

**6.—Same—Charge of Court—Requested Charge—Self-defense—House of Prostitution.**

Where, upon trial of murder and a conviction of manslaughter, the evidence showed that the homicide occurred in a house of prostitution, there was no error in the refusal of the court of a requested charge to the effect that the jury could not consider the character or reputation of the house in which the homicide took place, or the parties therein, as in any manner abridging the defendant's right of self-defense, the court's main charge not qualifying defendant's

right of self-defense; nor in rejecting testimony that the deceased received part of the money which was earned by the women in the house of ill-fame, etc.

**7.—Same—Jury and Jury Law—Practice on Appeal—Manslaughter—Discretion of Court.**

Where defendant complained that after the trial court on his request held as disqualified a number of jurors, because they stated that if it should develop that defendant was living in a house of prostitution at the time of the homicide it would influence them, and thereafter declined to permit the same question to be asked further of other jurors, held, that while this was the basis for a peremptory challange, it was in the court's discretion to refuse to permit such question in examining jurors on their voir dire; besides, the question raised was for the object of reducing the grade of the offense to manslaughter, as shown by the bill of exceptions, of which defendant was convicted, and there was no reversible error.

Appeal from the District Court of Tarrant. Tried below before the Hon. R. E. L. Roy.

Appeal from a conviction of manslaughter; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Mays & Mays,* for appellant.—On question of moral turpitude and discrediting witness: Dickey v. State, 56 S. W. Rep., 627; Levine v. State, 35 Texas Crim. Rep., 647.

On question of introducing knife: Cole v. State, 45 Texas Crim. Rep., 225; Christian v. State, 46 id., 47; Melton v. State, 47 id., 451; Crenshaw v. State, 48 id., 77; Puryear v. State, 50 id., 454; Lucas v. State, 50 id., 219.

*E. B. Hendricks,* Assistant Attorney General, for the State.

MORROW, JUDGE.—Appellant was indicted for the murder of Sam Brown, convicted of manslaughter, and his punishment assessed at five years confinement in the State penitentiary.

Appellant killed deceased by stabbing him with a knife. The homicide took place at a house of ill-fame kept by a woman named Miller, at which house appellant and his wife at the time resided. The State's theory and evidence was that appellant was intoxicated and attacked the deceased without provocation. Appellant claimed to have acted in self-defense.

One of the witnesses, May Stokes, was a common prostitute and an inmate of the house at which the homicide took place. Appellant's bill of exceptions complains of the refusal of the court to allow him on cross-examination to show by her that she had been arrested for drunkenness several times in the preceding six months. The offer was not to prove that she was drunk at the time of the homicide. This would have been admissible as testing her knowledge of the facts. Green v. State, 53 Texas Crim. Rep., 490; Wallace v. State, 65 Texas Crim. Rep., 654, 145 S. W. Rep., 925; Lewis v. State, 33 Texas Crim. Rep., 618. Proof, however, that she had been arrested for drunkenness on other occasions would be proof that she was charged with a misdemeanor not involving

moral turpitude, which, under the decisions of this court, is not receivable. Branch's Ann. P. C., pp. 102-103, secs. 168-169, and cases cited. Appellant insists that the fact that the witness being a woman and in the habit of getting drunk would have tended to discredit her testimony beyond the point that it would have discredited by proof which was made that she was a prostitute. We think, as stated, that the evidence was not admissible. It would have been but cumulative of the fact testified to by the witness that she was in the habit of drinking intoxicating liquors.

Complaint of the exhibition of the knife which was used in killing of deceased is made. It was not shown to be a deadly weapon per se, and was an element of evidence to be considered in determining the intent of the appellant, made so by statute. Art. 1147, P. C. Appellant relies upon the cases in which it has been held erroneous to introduce the clothing of deceased in evidence. These cases will be found to reject such evidence only when it tends to prove no controverted fact, and to receive it when it does tend to make such proof. The knife in question, we think, comes within the latter rule, particularly under the statute mentioned and the authorities construing it. Vernon's P. C., p. 717. See also Branch's Ann. P. C., p. 1031, sec. 1855; Wharton's Crim. Ev., sec. 311, vol. 1.

There is another bill complaining of the failure of the court to permit appellant to prove by the witness Miller that the deceased had the reputation, when under the influence of intoxicating liquor, of being a quarrelsome and dangerous man. This fact was proved by a number of witnesses, and so far as we can discern from the record is not a controverted issue. From the record it appears that the deceased bore the reputation of being a violent, dangerous, quarrelsome man, drunk or sober. Under the circumstances the bill shows no harmful error.

Another bill complains that appellant desired to ask several witnesses the general reputation of deceased in the neighborhood where he lived with reference to being of a quarrelsome and fighting disposition. The court qualifying the bill says that he offered to permit proof by the witnesses that deceased had the reputation of a fighting and dangerous man. A number of witnesses testified that deceased was a quarrelsome, dangerous, fighting man. Some of them qualified it by saying that he was such when he was under the influence of intoxicating liquor. Several of these witnesses testified to specific instances in which the deceased manifested a fighting and quarrelsome disposition. Appellant testified to a number of instances himself. Proof was undisputed that deceased had been drinking on the day of the homicide. Some of the witnesses testified that he was not drunk, but none testified to his good character as a peaceable man, nor disputed the fact that he was a quarrelsome, fighting man.

The State asked some witnesses if appellant had not lived in adultery with his wife prior to their marriage. This was excluded, and the prosecuting attorney in arguing the case stated "They lived together as husband and wife before they were married." The bill shows that the court orally instructed the jury not to consider this remark, but refused writ-

ten instructions to that effect. It appears after this bill was allowed the record in the court below was corrected so as to show that a special charge requesting the withdrawal of this remark was given by the court to the jury, and by motion for certiorari, which was granted, the record here was corrected. The undisputed evidence was that appellant and his wife were living in a house of ill-fame at the time of the homicide; that the wife had preceded her husband there,. and there was evidence that he knew the character of the premises and the reputation of the keeper of the house, Mrs. Miller, and that it was a house of prostitution. The record shows without objection that appellant's wife was living with Mrs. Miller at the time of his marriage. Attention to this is directed in the court's qualification to the bills under discussion. Appellant claimed that his wife had gone to the house of Mrs. Miller while he was away from home, and that he had gone there a month or six weeks before the homicide and persuaded her to go back with him to keeping house, but that not having the money to make the necessary preparation at that time, they agreed to live together at Mrs. Miller's house in a room which they rented, and did live there during the time intervening up to the time of the homicide. There was evidence that during her stay there the wife of appellant pursued her avocation as a common prostitute with appellant's knowledge and consent. Brown, the deceased, was a cousin of appellant, and it appears was or had been living with Mrs. Miller and putting in a good portion of his time there. On the day of the homicide appellant went to the house and in his wife's room found a man asleep on her bed. He, appellant, as claimed by the State's witnesses, was drunk, which was denied by him. He ordered the man out and was having a wordy altercation with his wife when deceased went in the room to quiet the disturbance, as claimed by the State, and while in there he and appellant had words, deceased going into the kitchen of the house and appellant also going therein. Appellant claimed that when deceased came in the room where he was that he cursed him, stating, "This is our house and I am running it," and stating that if appellant's wife stayed there she had to hustle; that he, deceased, was broke and had to have money; that as deceased went out he said something to the wife of appellant, which appellant did not hear; that when he reached the kitchen deceased attacked him and he cut him to save his life. He offered proof by one of the witnesses that deceased received part of the money which was earned by the women in the house, and also claims that his special charge to the effect that the jury could not consider the character or reputation of the house in which the homicide took place, or the parties therein, as in any manner abridging the defendant's right of self-defense, but that his right to defend against an unlawful attack would be the same as any other place under the circumstances. The harm of refusing this charge, appellant insists, was emphasized by the fact that in selecting the jury a number of them were disqualified by stating that if it should develop that appellant was living in a house of prostitution it would influence them. After excusing several jurors on this ground the court declined to permit the same question

to be asked further. We think this question would have been a proper one for not a disqualification but as basis for a peremptory challenge. The bill, however, does not raise the question as to error in permitting the question but refers to it only as emphasizing the necessity for the special charge mentioned. The court's charge does not in any way qualify appellant's right of self-defense, and is not complained of as doing so. Under these circumstances we do not think the court committed error in refusing the special charge, nor in rejecting the testimony mentioned. The record indicates that deceased was interested in the house. That fact, however, it seems would not bear on the issue of self-defense, and a verdict of manslaughter was rendered though the facts immediately attending the homicide as detailed by the State's witness showed an unprovoked assault by appellant. The environments and relation of the parties must have induced the jury to find the lower grade of unlawful homicide. The verdict excludes the idea of any prejudice on the part of the jurors.

The judgment of the lower court is affirmed.

*Affirmed.*

## ON REHEARING.

### April 10, 1918.

MORROW, Judge.—The original opinion deals with all questions that are raised in the motion for rehearing except that involved in appellant's eleventh bill of exception. This bill relates to the question asked in selecting the jury which was in substance like one discussed in the original opinion. We have reviewed the record in the light of the motion for rehearing and are unable to reach a conclusion different from that therein expressed.

The eleventh bill of exception, in substance complains that after the court, at appellant's request, had held disqualified a number of jurors who answered in an affirmative manner a question propounded by appellant, it declined to permit the same question to be propounded further for the purpose of disqualification. The question, in substance, was an inquiry whether if the court instructed them that insulting remarks made by deceased to the wife of appellant might reduce the grade of the offense from murder to manslaughter, and it appeared from the evidence that the homicide took place while the appellant and his wife were living in a house of prostitution, they would try the appellant just like they would try any other man who was not living in a house of prostitution.

The question as propounded was hypothetical, a character of question which it seems the court has discretion to refuse to permit in examining jurors on their voir dire. Thompson on Trials, secs. 101-104, vol. 1, p. 114; Railway Co. v. Terrell, 69 Texas, 650. The manner of examining jurors even for the purpose of peremptory challenge is necessarily one in which the trial court has some latitude in the exercise of discretion. Cyc., vol. 24, p. 328. The question propounded might have been modified so as to elicit the information which appellant desired with reference to the mental attitude of the jurors with reference to

the trial of appellant and if it had been so modified and the purpose of it had been for the use of appellant in exercising his peremptory challenges, we think he would have been entitled to the information. The scope of inquiry for the purpose of obtaining information from jurors as a basis for peremptory challenge is quite broad. This inquiry as shown by the bill, however, was not made for that purpose but as a basis for disqualification of the jurors. The question was addressed to the attitude of the jurors with reference to according the appellant the benefit of the statute with reference to insulting remarks to a female relative in deciding whether the homicide was murder or manslaughter. The verdict of manslaughter would seem to indicate that appellant was not harmed by the action of the court complained of in this bill.

The motion for rehearing is overruled.

*Overruled.*

PRENDERGAST, JUDGE, absent.