William Meador v. The State.

No. 7428.    Decided June 13, 1923.

1.—Murder—Jurisdiction—Constitutional Law.

Defendant's plea to the jurisdiction of the trial court attacking the law of 1905, authorizing District Judges to call special terms of their courts, when deemed advisable at times fixed by them, etc., because of a violation of sections 35 and 36 of Article 3 of our Constitution, and because of a failure to give notice for the convening of such special term, was correctly overruled. Following Mayhew v. State, 155 S. W. Rep., 191.

2.—Same—Continuance—Practice on Appeal.

In view of the disposition of the case it is not necessary to discuss appellant's application for a continuance.

3.—Same—Jury and Jury Law—Questions on Voir Dire.

Upon trial of murder the refusal of the trial judge to allow defendant to ask the veniremen if they were prejudiced against the law of self-defense, based on real or apparent danger, is reversible error, as there seems no doubt under the decisions in this State that for the purpose of enabling the accused to intelligently exercise his peremptory challenges, he has the right to ask any question whose answer would reasonably affect his choice of jurors. Following Hibbitt v. State, 236 S. W. Rep., 739, and other cases.

4.—Same—Charge of Court—Malice—Self-Defense—Manslaughter.

A shooting upon malice aforethought can be neither self-defense nor manslaughter, but in our opinion a charge would be better if it told the jury that if they believed from all of the evidence beyond a reasonable doubt that the shooting was not in self-defense nor under circumstances which would reduce it to manslaughter, but was upon malice aforethought, then the defendant would be guilty of murder.

5.—Same—Charge of Court—Self-Defense—Manslaughter.

One who kills another in sudden passion arising from adequate cause, might act in self-defense, and where both issues are raised by testimony, it is the better practice in submitting the law applicable to manslaughter to place therein the qualifying clause, "and not in self-defense."

6.—Same—Grouping Facts—Charge of Court.

Where, upon trial of murder, the court in his charge on manslaughter and self-defense grouped the antecedent facts of the case he thereby confused the jury, and in the instant case should have avoided such an instruction and submitted the law of murder, manslaughter, self-defense and defense of another in appropriate language, and his failure to do so was reversible error.

**7.—Same—Charge of Court—Manslaughter—Imperfect Self-Defense.**

In view of another trial, attention is called to the law of manslaughter growing out of imperfect self-defense, and attention is directed to Mr. Branch's Annotated P. C., Sections 1751 and 2008.

Appeal from the District Court of Ward. Tried below before the Honorable Charles Gibbs.

Appeal from a conviction of murder; penalty, ninety-nine years in the penitentiary.

The opinion states the case.

*John Howard, G. E. Lockhart,* and *Williams & Williams,* for appellant.—On question of selecting veniremen, Hibbitt v. State, 236 S. W. Rep., 739, and cases cited in opinion.

On question of court's charge, Garcia v. State, 156 S. W. Rep., 939; Roberts v. State, 156 id., 651; Thomas v. State, 45 Texas Crim. Rep., 114.

On question of court's charge on self-defense and manslaughter, Smith v. State, 57 Texas Crim. Rep., 586; Best v. State, 58 id., 327; Puryear v. State, 56 id., 240; Lewis v. State, 231 S. W. Rep., 117.

*R. G. Storey,* Assistant Attorney General, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the district court of Ward county of murder, and his punishment fixed at ninety-nine years in the penitentiary.

Appellant was a boy nineteen years of age. Deceased was a tenant or hired man upon the ranch of appellant's father. Feeling had grown up between the two men and had culminated in an encounter between them shortly before the homicide. On the day in question Andy Meador, the father of appellant, accompanied by appellant and some other members of his family, went down to the ranch. Without going into details, there was trouble shortly after their arrival. Andy Meador with his family went to a neighbor's house and phoned for the sheriff. They started back toward their own ranch and on the way met deceased and his wife. We do not deem it necessary to state the details of what occurred here, but the testimony of the State consisting principally of that of the wife of deceased on the one side, and that of the defense as given by appellant and his sister on the other side, differs very materially. All parties agree that they remained at this place several hours and that finally deceased was tied by appellant and got into the car of the Meadors, in company with his wife and the Meador family, and shortly thereafter the homicide took place. The State's theory is that during the time the party were at the place where the homicide occurred and when deceased submitted to be tied and got into the car, he was under duress and acting accord-

94 T. C.—39.

ing to the orders of appellant and his father, and that after the party got into the car appellant and his father assaulted deceased and his wife with their hands, fists, a pair of pliers and by beating them with guns and finally by the shooting of deceased by this appellant. The defensive theory was that deceased agreed to go to the county seat in the car of appellant's father and that he consented to be tied and carried therein. That after getting in the car under those circumstances, in some manner deceased got his hands loose and made a violent assault upon Andy Meador under such circumstances and in such manner as to cause this appellant to believe that he was about to kill Andy Meador, and that so believing and in defense of his father appellant shot and killed deceased.

By his plea to the jurisdiction of the trial court appellant attacks the law of 1905 authorizing district judges to call special terms of their courts when deemed advisable, at times fixed by them, etc. It is urged that said Act is violative of Secs. 35 and 36 of Art. 3 of our Constitution; that said act is invalid in that it attempts to authorize district judges to call special terms of their courts without having theretofore fixed the time for convening such court, and without having given notice in some sufficient way of the time for the convening of such special terms. Secs. 35 and 36 of Article 3 of our Constitution relied on by appellant, are those forbidding the passage of laws by bills containing more than one subject which must be expressed in the title; or the amending of laws merely by reference only to their titles. This contention of appellant seems to us to be directed at the soundness of the opinion in Mayhew v. State, 69 Texas Crim. Rep., 187, 191, in which this court held that the adoption of the Revised Statutes of 1911, from which were omitted certain provisions of Chapter 4, Title 28, Revised Statutes of 1895, relative to the calling of special terms of district courts, and by which in lieu of said omitted articles of the statute, the provisions of Chapter 83, Acts Regular Session 29th Legislature 1905 were inserted,—operated as a repeal of the omitted parts of the statute. In our judgment the opinion in the Mayhew case is correct, and we do not discuss the application of Secs. 35 and 36, of Art. 3 of the Constitution, to the Act of the Thirty-second Legislature in 1911 adopting the Revised Statutes omitting the above articles and inserting in lieu thereof others, further than to call attention to Sec. 43 of said Art. 3 of our Constitution which in terms exempts from the operation of Secs. 35 and 36, supra, those acts of the Legislature having for their purpose the adoption of revisions or digests of former statutes. We might, however, further observe that in the adoption of the Revised Statutes of 1911, the Legislature included the revision of the Penal Code and the Code of Criminal Procedure of this State, and in Articles 93 to 97, Chapter 3, Title 2 of the Code of Criminal Procedure as adopted in 1911, we find the articles relative to special terms of District Courts which are

included in the civil statutes. In the Mayhew case, supra, we said that there is now no notice required to be given or published of the convening of any special term of the District Court, and that the judge can make any order at such special term as he could make at a regular term, unless forbidden by statute. The Mayhew case is approved in Davis v. State, 83 Texas Crim. Rep., 539, which cites many authorities, also in Shaw v. State, 89 Texas Crim. Rep. 205, and other cases since. We uphold the validity of the statute authorizing the calling of the special term at which the indictment herein was returned.

In view of our disposition of the case we do not discuss appellant's application for a continuance.

Appellant has a number of bills of exception complaining of the refusal of the learned trial judge to allow him to ask the veniremen if they were prejudiced against the law of self-defense based on real or apparent danger. There seems no doubt under the decisions in this State that for the purpose of enabling the accused to intelligently exercise his peremptory challenges he has the right to ask any question whose answer would reasonably affect his choice of jurors. If one is opposed to a certain law involved in the case on trial he might be subject to challenge for cause if it appear that his opposition is such that he could not give to the party entitled, the benefit of such law. If opposed at all, even though he be ready to answer that notwithstanding such attitude he could render a verdict unaffected, the parties litigant have the right to ask and be informed so that they may act thereafter with knowledge. Hibbitt v. State, 90 Texas Crim. Rep. 527; Campbell v. Campbell, 215 S. W. Rep. 134; Houston v. State, 80 Texas Crim. Rep., 190, 202 S. W. Rep. 84; Fernandez v. State, 82 Texas Crim. Rep., 129, 198 S. W. Rep. 301; Barnes v. State, 74 Texas Crim. Rep., 501, 168 S. W. Rep. 858; Caton v. State, 66 Texas Crim. Rep. 473. The recent case of Reich v. State, No. 7277, opinion May 30, 1923, discusses the principle involved and cites authorities. It follows that in our opinion the action of the learned trial judge was erroneous.

A shooting upon malice aforethought can be neither in self-defense nor manslaughter, but in our opinion a charge would be better if it told the jury that if they believed from all the evidence in the case, beyond a reasonable doubt, that the defendant A. B. shot and killed the deceased C. D. in E. County, Texas, about the —— day of ——, and that such shooting was not in self-defense, nor under circumstances which would reduce it to manslaughter, but was upon malice aforethought, then in such event they should find him guilty of murder and assess his punishment, etc.

One who kills another in sudden passion arising from adequate cause might act in self-defense, and where both issues are raised by testimony we think it the better practice in submitting the law ap-

plicable to manslaughter to place therein the qualifying clause "and not in self-defense."

The trial court gave the following as part of his charge:

"If you find and believe from the evidence that on the occasion in question the deceased had consented to be tied and hauled in a car to the town of Andrews, and if you further find that pursuant to such agreement, if any, the defendant assisted by or under the direction of his father tied the deceased and if you further find that deceased entered said car agreeably to such transit, and if you further find that during such journey the deceased became untied, or was otherwise released, and if you further find that the deceased, or the deceased and his wife made an attack upon said Andy Meador, which from the manner and character thereof caused the defendant to have a reasonable expectation or fear that the deceased, or the deceased and his wife, would either kill or inflict serious bodily harm upon said Andy Meador, father of the defendant, and if you believe that the defendant, Williams Meador, acting upon such reasonable expectation or fear, killed the deceased then and in that event, or if you have a reasonable doubt thereof, you will find the defendant not guilty."

And again in Paragraph 17 of the charge, in applying the law to the facts, the court grouped a great many facts involved in the testimony. We doubt the wisdom of such attempted grouping of facts in any case. The charge above quoted requires the jury to believe a number of things, one or more of which might be believed by them and still the accused not be guilty, and vice versa. If the facts relating to the immediate killing be in substantial accord, as viewed from the standpoint of the State and the defendant, and the question be whether or not such facts were legal or illegal as viewed in the light of the State's contention or that of the defendant, concerning antecedent events, then there might arise an apparent necessity for mentioning same and submitting the law of such antecedent facts and occurrences. In the instant case, however, the testimony relative to what occurred at the time and immediately connected with the homicide varied so widely as reflected by the testimony for the State, from that offered by the appellant, as leads us to conclude that the attempted grouping of antecedent facts could but tend to confuse the jury.

According to the testimony of the wife of deceased, her husband made no attack at all upon Andy Meador at the time of the shooting. She testified that after her husband's hands were tied by appellant they all got in the car and that appellant made an assault upon her and when her husband struggled to release himself, apparently to defend witness, appellant beat him over the head with a pair of pliers and reduced him to a state of semiconsciousness. She then detailed continued assaults upon her and her husband by appellant and his father covering a period of one-half hour or more, which culminated,

according to her testimony, in the request by appellant of his father that he be permitted to shoot deceased. She said that Andy Meador told him that he was afraid Thornberry would hear the shot. The Thornberry residence was in sight about a half mile off. She further stated that appellant again asked his father to let him shoot deceased and that Andy Meador told him to go ahead and shoot him, whereupon appellant fired the fatal shot.

Appellant and his sister testified in substantial accord that after waiting for the sheriff to come for a long time, deceased agreed that he might be tied and carried to Andrews, the county seat of Andrews County, in their father's car, and that appellant tied him and the party all got in the car, and that soon after getting in and before they left the place deceased got loose in some way and threw himself upon appellant's father and began choking him and reduced him to such a condition that appellant thought he was going to kill him, and that in order to protect his father he got the gun and shot.

In our opinion the grouping of facts as was done in the instant charge should be avoided and an instruction should be given the jury in appropriate language upon the law of murder, of manslaughter and defense of appellant's father, in the terms of approved charges, in substance, that the killing if not in self-defense and not under circumstances reducing same to manslaughter, but if upon malice aforethought, would be murder; but if the jury believe from the evidence that the homicide was unlawful but did not believe beyond a reasonable doubt that same was on malice aforethought, then they should consider whether same was manslaughter; which should be followed by full and apt instructions on the law of manslaughter containing, among other things, instructions that the jury might look to all the facts and circumstances in determining the adequacy of the cause. On the issue of self-defense of himself or his father, in view of the fact that the State denies in toto any attack on the father of appellant by the deceased,—and the defensive theory rested entirely upon the fact of such attack,—the charge should be made to depend on the jury's belief in this regard. If the homicide was to defend against an attack reasonably calculated to produce in the mind of appellant a fear and apprehension of the death or serious bodily injury of his father at the hands of the deceased, he should be acquitted. If satisfied beyond a reasonable doubt that there was no such attack by deceased, the accused should not be acquitted on such ground.

The State's theory of the case is that regardless of what had preceded the immediate acts of appellant and deceased before they had gotten into the car, that appellant attacked deceased while in said car and killed him. If so and not in defense of his father, it would be murder or manslaughter. The defensive theory, regardless of what occurred before they got into the car, is that appellant shot to defend his father against a murderous attack by deceased. If the jury should

believe this defensive theory supported by the testimony of appellant, his sister and brother, they would likewise believe the same witnesses as to the antecedent happenings. This would apply to the jury's belief of the State witness,—if they believed her as to the fact that deceased made no attack upon appellant's father, there would seem no doubt of their acceptance of her testimony as to the antecedent facts. Hence our statement that charges grouping such facts could but confuse the jury. What we have here said is based on the facts as they appeared on this trial. We do not attempt to lay down any rule applicable if it should be made to appear that deceased was trying only to release himself from unlawful restraint further than as below stated.

In view of another trial we call attention to the law of manslaughter as growing out of imperfect self-defense. Mr. Branch cites many authorities in Secs. 1751 and 2008 of his Annotated P. C., which afford light on this proposition. If appellant and his father restrained and falsely imprisoned deceased by force or threats or the show of a weapon and thereby compelled him to submit to being tied and to agree that he might be carried to the county seat, even though their purpose was to do him no other injury or harm, such acts would be unlawful on their part. If the jury believed that in an effort to obtain his release or freedom from such restraint and imprisonment deceased made an assault upon appellant's father in which they believed that he used more force than was reasonably necessary to effect such release, and in response to which or in defense against which appellant took the life of the deceased, he might be guilty of no higher grade of offense than manslaughter.

If the State's theory be true as made by its testimony and appellant shot and killed the deceased not in defense of his father and not under such circumstances as would reduce it to manslaughter, his offense would be murder.

For the errors above mentioned the judgment of the trial court will be reversed and the cause remanded.

*Reversed and remanded.*