# MAY 12, 1943

## CAP CLOWERS v. THE STATE.

No. 22505. Delivered May 12, 1943.

The opinion states the case.

*T. B. Bartlett, Sr.,* of Marlin, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is murder. The punishment assessed is confinement in the State penitentiary for life.

The State's theory was that appellant killed the deceased, A. E. Newman, with malice aforethought, while appellant contended that he did so in self-defense.

Two persons besides the appellant were present when the killing occurred, both of whom testified that the deceased was sitting in a pick-up truck and that they were standing on the side of it talking to him when appellant came across the highway to the rear of the truck and then walked up to the left side of it; that after he had drawn a pistol he remarked: "You G-- d--- s-- of a b----, Newman," and began firing at the deceased; that he fired three or four shots; and after the deceased had fallen partly out of the truck on the opposite side thereof, appellant walked around to that side, looked at the deceased and then went back the same way from which he had come, without going into the store.

Appellant testified in his own behalf that he had lived with his family on the deceased's farm about two years; that during said time he had frequently noticed the deceased's automobile at his home; that one morning while he was down in a branch he saw his wife and the deceased come out of the home hand in hand, and when they reached the automobile he saw the deceased kiss his (appellant's) wife; that on another occasion he secreted himself in a room at his home, when soon thereafter the deceased came there, went into the house and they (deceased and appellant's wife) went to the bed room and bolted the door; that he went to the room and found the door latched; that he broke the latch, entered the room and saw both his wife and deceased standing therein; that from the appearance of the bed he could tell that they had been on it, but on neither occasion did he say anything to his wife about the matter. However, later, he did say something to her about it, but she denied any intimacy with the deceased. He further testified that he and his wife separated in September, 1941; that in February, 1942, she obtained a divorce from him; that after the divorce was granted he met his wife in Marlin and she told him that the deceased had furnished the necessary money to get the divorce; that about three or four days prior to the killing, he and the deceased met in the road; that the deceased said to him: "You g--- d--- s--- of a b----, if you don't stop talking about me and your wife and putting out all these tales about us, I will kill you," and at the same time drew a shotgun on him; that his wife had theretofore told him that the deceased was carrying a gun for the purpose of killing him. He also testified that on the morning of the killing, he had gone to his mail box and had started across the highway to Hardin's store; that as he approached the car, he saw the deceased lean over in his car as if he were trying to get to the glove compartment thereof; that he thought the deceased was reaching for a gun, whereupon he drew his pistol and began firing; that it was the first

time he had seen the deceased since he was threatened by him a few days prior thereto; that he shot the deceased in self-defense, believing that his life was in danger.

Thirteen bills of exception are brought forward, the first two of which complain of the action of the trial court in refusing to permit appellant to inquire of each prospective juror, on his voir dire examination, if he thought it was a good law which gave defendant the right to go to a person and demand an explanation as to insults and misconduct towards a female relative; that as a result of the court's ruling he was forced to accept two objectionable jurors. The court, in his qualification, certifies that he sustained the State's objection to the form of the question but permitted appellant to inquire of each juror if he had any prejudice against said law, and that each juror emphatically stated that he did not. We think the court's ruling was correct. In selecting a jury to try the issues between parties, it is essential to secure impartial jurors, who have neither bias nor prejudice against any person or any law. To have permitted the inquiry might have resulted in obtaining jurors who were biased. We see no injury to appellant reflected in the bills.

By Bill No. 3 appellant complains of the court's action in declining to permit appellant's sister and daughter to sit within the railing beside him while the jury was being selected, thereby depriving him of their advice and counsel in the selection of the jury. In his qualification of the bill the court states:

"There is a rail in the front of the court room, and it has been the policy of the court to permit no one but the lawyers and the defendant inside of the rail during the progress of the cases."

This bill fails to show that any injury resulted to the appellant from the court's ruling. There is nothing in the bill which shows that appellant's sister or his daughter were acquainted with any of the jurors or had any knowledge of their temperament, disposition or inclination to do otherwise than to deal out even-handed justice, nor that any of the prospective jurors had any prejudice against him which they failed to reveal. Moreover, the court has a wide discretion in matters of this kind and unless it is shown that he has abused his discretion with respect thereto to the prejudice of appellant, we would not be justified in reversing the judgment of conviction.

By Bill of Exception No. 4 complaint is made of the court's action in permitting the State to prove by the District Clerk

that his divorce docket showed that appellant's wife had obtained a divorce prior to the killing on the ground of cruel treatment; that this evidence was admitted after appellant had testified that he and his wife had agreed on the divorce being granted after he had found her with the deceased in intimate relations. In his qualification of the bill, the court states that the clerk was allowed to testify from the minutes of the court as to when the divorce suit was filed and when it was granted but not to go into any of the details thereof. As thus qualified, the bill fails to reflect any error. We do not understand how any harm or injury resulted to the defendant from the testimony complained of since appellant himself first testified to the fact that his wife had obtained a divorce sometime prior to the alleged homicide. Just why similar evidence introduced by the State should be considered hurtful is inconceivable.

By Bill No. 5 appellant complains because Mrs. Newman, widow of the deceased, was permitted to testify that sometime prior to the homicide, Mrs. Waites, a daughter of the appellant, came to the home of the deceased and stated to her in the presence of Mrs. Stewart that her father (appellant) was carrying a gun; that he was going to shoot the deceased and for him not to come to their home. Appellant objected to this testimony on the ground that it was prejudicial and was an attempt to impeach Mrs. Waites on an immaterial matter. In his qualification of the bill the court states that Mrs. Waites was asked on cross-examination by the State "if she did not go to Newman's house and to tell him that her father was carrying a gun for him and that he would kill him." She denied making this statement, whereupon the State placed Mrs. Newman on the stand, who testified that Mrs. Waites did come and tell him (Newman) that her father was looking for him and would kill him. This was admissible for impeachment purposes.

Bills of Exception Nos. 6, 8, and 9, are, in our opinion, without merit, and we see no need of discussing the same at length. See Foster v. State, 8 Tex. Cr. App. 248; Smith v. State, 21 Tex. Cr. App. 277 (see page 306) ; Smith v. State, 56 Tex. Cr. R. 316.

By Bill of Exception No. 2 appellant complains of the following remark of the special prosecutor in his closing argument to the jury:

"The Court would not have granted the divorce to his wife if the defendant had not been cruel to her."

Appellant objected to said argument as prejudicial and irrelevant. The court sustained the objection and instructed the jury not to consider the remark. This bill is deficient in two respects: First, it fails to state that the remark was not based on any evidence, nor that it was not a reasonable deduction therefrom; and second, it fails to state that the remark was not invited by, nor was it in reply to, the argument by appellant's counsel. See Richardson v. State, 99 Tex. Cr. R. 514, in which this court, speaking through Judge Lattimore, said:

"Nothing in the bill informs us as a matter of fact that the argument was not in reply to that of appellant's counsel."

See also Fowler v. State, 89 Tex. Cr. R. 623; Winslow v. State, 50 Tex. Cr. R. 465; Russell v. State, 96 Tex. Cr. R. 105.

By Bill of Exception No. 10 appellant complains because the court declined to submit to the jury his special requested charge to the effect that if they believed from the evidence that at the time appellant shot the deceased that the deceased reached to the glove compartment of his car, which induced appellant to believe, viewing it from his standpoint, that the deceased was about to make an attack on him which created in his mind a fear of death or serious bodily injury, then the defendant had a right to shoot and continue to shoot the deceased as long as he deemed it necessary to defend himself; and this would be true even though they believed from the evidence that the appellant had made up his mind to kill the deceased, and if they so believed or had a reasonable doubt thereof, to acquit the appellant. The trial court gave two charges on the subject of self-defense: one on actual and apparent danger, and another on threats accompanied by some act, word or words manifesting an intention on the part of the deceased to carry said threats into execution. In each of said instructions the court told the jury that they must view the facts and circumstances from the standpoint of the defendant as they appeared to him at the time. The court did not curtail or limit his right of self-defense; hence the court's refusal to give the requested instruction does not reflect error.

Bill of Exception No. 11 complains of the court's action in declining to give his special requested charge to the effect that if the jury believed from the evidence that the defendant's wife told him that she and the deceased had been "illicitly intimate" with each other, and that the deceased told her he was going to kill the defendant, and that thereafter the deceased met the defendant and told him that if he ever mentioned anything that

had occurred between him and the defendant's wife that he would kill the defendant, and that on the morning of the homicide the deceased reached into, or attempted to reach into, the compartment on the dashboard of his car as if to get a weapon, in a manner reasonably calculated to induce the defendant to believe that the deceased was about to make an attack upon him, then the defendant had a legal right to defend himself from such apparent danger and to shoot the deceased; and this would be true whether the deceased was armed or not and whether or not there was any real danger, then and in such event the jury should acquit him. The trial court, in his main charge, instructed the jury on the subject in effect that if they believed from the evidence that prior to the homicide it was communicated to the defendant, or if they believed that he had any knowledge that threats had been made by the deceased to kill or inflict serious bodily injury upon him, and that he believed such communications as to threats made against him were true; "even though you may believe that no threats had in fact been made, and if you further believe from the evidence that at the time of the homicide the deceased, by acts then done, or by words coupled with such acts, if any, reasonably created within the mind of the defendant, as viewed by him from his standpoint at the time, an apprehension of fear that the said deceased was in the act of executing the threats so made, or was about to execute the same; or if you believe that the deceased by his conduct, coupled with his words, if any, indicated that he was then and there about to unlawfully attack the defendant and inflict upon him death or serious bodily injury, even though you may believe that no danger in fact existed, and that so believing the defendant shot and thereby killed the deceased, you are instructed that the same would be justifiable homicide and—if you so believe, or if you have a reasonable doubt thereof—then you will acquit the defendant, and say by your verdict 'not guilty'." We think that in view of this charge, no error was committed by the court in declining to give appellant's requested instruction.

By Bill No. 12 appellant complains because the court declined to submit to the jury his special requested charge to the effect that appellant had a legal right to go to the deceased and ask for an explanation of his conduct towards him and the previous threats, etc., or to include in his main charge one of like import. There was not any evidence introduced that he sought the deceased to ask for an explanation of threats, which authorized or required such an instruction. The court is not authorized by law to charge upon any theory not raised by the

evidence. Consequently the court did not err in declining to give any instruction to the jury on the subject.

Bill of Exception No. 13 is qualified by the trial court, and as thus qualified, it fails to reflect any error. To discuss the same would only extend this opinion at length and serve no useful purpose.

Appellant, in due time, presented a number of objections to the court's charge. Some are too indefinite and do not specificaly point out any error, and the others are without merit.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.