Fred REEVES, Appellant,

v.

The STATE of Texas, Appellee.

No. 45433.

Court of Criminal Appeals of Texas.

Jan. 31, 1973.

Rehearing Denied March 21, 1973.

Bill Pemberton, G. C. Harris, Greenville, for appellant.

Larry Miller, Dist. Atty., Greenville, and Jim D. Vollers, State's Atty., Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

This is an appeal from the conviction for the offense of unlawful sale of a dangerous drug, to-wit: lysergic acid diethylamide (referred to herein as LSD); punishment assessed, 10 years.

The record reflects that during the early morning hours of January 27, 1971, Glenn Chism, a special agent for the Federal Bureau of Narcotics and Dangerous Drugs, and an informant traveled to a residence in Greenville and there met appellant who was inside the residence. Chief Deputy Norman Gray and two other officers parked their car several houses away and set up a surveillance. Chism asked appellant if he had any drugs for sale. Appellant stated that he did have drugs for sale and asked how much Chism wanted to purchase. After a brief negotiation, appellant agreed to sell ninety tablets of LSD to Chism for eighty dollars. With money which had earlier been supplied by Gray, Chism gave appellant eighty dollars in exchange for ninety tablets of LSD.

Appellant's first ground of error is that the indictment charges him with "sale" of a dangerous drug and the amendatory act in Section 3(a) of Article 726d, Vernon's Ann.P.C., makes only a "delivery" of a dangerous drug illegal. Section 1 of the same Article provides:

"The Legislature of the State of Texas hereby finds that it is essential to the public health and safety to regulate and control the handling, *sale* and distribution of 'dangerous drugs,' as defined in this Act.

"It is, therefore, hereby declared to be the policy and intent of the Legislature of the State of Texas and the purpose of this Act to regulate and control such handling, *sale,* and distribution, and, in particular, but without limitation of such purpose, to insure that the public shall receive the therapeutic benefits of 'dangerous drugs' . . . . to prevent such handling, *sale* or distribution for harmful or illegitimate purposes; . . . for preventing the improper distribution of such drugs to the extent that such drugs are produced, handled, *sold,* or prescribed by them." (Emphasis added.)

This same contention was overruled recently in Wright v. State, 471 S.W.2d 407, wherein we stated:

"Appellant contends that the indictment charges him with 'sale' of a dangerous drug and the amendatory act in Section 3(a) only makes 'delivery' of a dangerous drug illegal. Section 2(b) defines the term 'delivery' to mean 'sale, dispensing, giving away, or supplying in any other manner.' The statute is not vague and an indictment charging sale of a dangerous drug puts a person on notice of the crime for which he is charged. This contention is without merit."

Appellant complains in his second ground of error that the court's charge on entrapment was not sufficient for the reason that another name (Norman Gray) should have been included in the charge as a person who may have entrapped appellant.

The court's charge on entrapment reads, in part, as follows:

". . . Now if you find from the evidence, or if you have a reasonable doubt

thereof, that on the occasion alleged, if any, the criminal design originated in the mind of the officer, GLENN CHISM, and that he induced the defendant to commit the crime charged in the indictment for the mere purpose of instituting a criminal prosecution against the defendant, and that the defendant had not contemplated the commission of said crime until such inducement, then you will find defendant not guilty."

■ Although Gray supplied Chism with the money he used to purchase the LSD from appellant, the testimony reveals that Gray was not present when Chism negotiated the sale, nor when the sale took place. The trial court did not err in refusing to add Gray's name to its instruction on entrapment. See, Vera v. State, Tex.Cr. App., 473 S.W.2d 22; Ochoa v. State, Tex.Cr.App., 444 S.W.2d 763; Cox v. State, 169 Tex.Cr.R. 332, 333 S.W.2d 849. See also, 8 Willson, Tex.Crim. Forms 7th Ed., Sec. 3579, p. 581; McClung, Jury Charges for Texas Criminal Practice, pp. 201–202.

■■ Appellant's third ground of error is that the evidence was insufficient (1) to show a sale of a dangerous drug, and (2) to show chain of custody of the LSD tablets.

Chism testified as follows:

"A. He (appellant) stated he did have drugs for sale and he asked me how much did I want to buy.

Q. (Prosecutor) What next, sir?

A. I asked him how much did he have.

Q. And what next, sir?

A. He stated that he had a hundred pills.

Q. All right, sir. And what next, if anything, sir?

A. He talked about prices then. He said he wanted at least a dollar a pill for the hundred tablets.

Q. All right, sir, I will ask you what kind of pills you were talking about with the defendant.

A. LSD . . .

Q. I will ask you, Mr. Chism, what occurred next.

A. We discussed prices. He finally agreed to sell one hundred tablets of LSD for ninety dollars and I agreed to buy it.

Q. All right, sir. What happened next, sir?

A. He told another individual who was in the residence at this time to go and get the tablets. The individual went and got the tablets, and handed them to me. I took them and counted them. There were only ninety tablets.

Q. Then what?

A. The defendant agreed to sell me the ninety tablets for eighty dollars.

Q. Then what occurred sir?

A. I gave the defendant eighty dollars of the funds furnished by the Hunt County Sheriff's office."

The testimony is sufficient to show a sale. Even though the appellant instructed another individual to go get the tablets, it is clear the individual did this at the request and at the instruction of the appellant.

The evidence is also sufficient to prove chain of custody.

Chism testified that he placed the 90 tablets of LSD in a match box on which he placed his initials. He then placed the match box in an evidence envelope, sealed the envelope and placed his initials on it. He then delivered the envelope and its contents to the Dallas Regional Laboratory.

John Wittiner, Jr., a chemist with the United States Bureau of Narcotics and Dangerous Drugs, testified that he removed the envelope from the evidence

vault at the Dallas Regional Laboratory where it had remained locked until he removed it on February 8, 1971. He broke the seal on the envelope, removed the match box from the envelope, initialed and dated it, removed the contents of the match box and found there to be 90 tablets. After performing a chemical analysis on a random sample of ten tablets, he was of the opinion that the tablets were Lysergic Acid Diethylamide (LSD). He then placed the remaining tablets back in the match box (State's Exhibit #3), placed the match box in an envelope (State's Exhibit #5) which he initialed and dated, and kept the match box, the evidence envelope (State's Exhibit #4) and his envelope (State's Exhibit #5) in his possession until he personally tendered them to the court on the day of the trial. At the court's direction, the LSD tablets were taken out of the match box and placed in a plastic vial (Exhibit #6) for the jury's convenience.

A proper predicate was laid for the introduction of the exhibits and the chain of custody was shown.

■ By his fourth ground of error, appellant contends the prosecutor and trial court committed reversible error by informing the jury, during the voir dire examination of the jury panel, that appellant had made a written application for probation. Reference is made to the following colloquy:

"MR. MILLER (Prosecutor): . . . The law of this state also allows someone who is convicted of this offense or any offense insofar as that is concerned be granted probation.

MR. PEMBERTON: Your Honor, we're going to object to the remarks of the District Attorney about matters of probation . . .

THE COURT: Objections overruled. State may proceed.

MR. PEMBERTON: We except to the ruling of the Court.

MR. MILLER: That a person can also be granted probation under the laws of this State if a person is qualified. Under the laws of this State, we submit in this case that we think the evidence will show that one Fred Reeves certainly does qualify under the law of this State to receive a probated sentence. However, ladies and gentlemen, in this case, after you have heard all the evidence and after everything has been presented to you that you can hear from the witness stand, later on we are going to ask the twelve of you who are selected to serve as members of this jury, number one . . .

MR. PEMBERTON: Your Honor, we're going to object to this jury argument that he's giving here to the jury as to what they feel. We think the purpose of this hearing right now is to qualify the jury on how they feel, your Honor.

THE COURT: The papers containing the motion or the request as mentioned by the state for probation, I believe that opened up the matter and the Court will allow the jurors to be examined relative to the matters of probation.

MR. PEMBERTON: Your Honor, we'll object to the—respectfully object to the remarks of the court that there is any papers referred to as being matters not in evidence. We feel it's a comment upon the weight of the testimony and also it's unsworn testimony, and we feel, Your Honor, that the reference to such matters is highly improper at this stage of the trial, and we feel it's harmful and prejudicial to the rights of this Defendant. We move the jury be instructed not to consider any of those remarks for any purpose whatsoever, Your Honor.

THE COURT: The jury will disregard any remarks made with reference to probation, except the fact that the Court will allow the jurors to be examined relative to their feelings on the matters of probation."

A motion for mistrial was denied.

It is proper to question the jury panel to determine whether there exists a prejudice or objection to assessing the range of punishment provided for by statute. And where the accused has requested that the jury assess punishment, pursuant to Article 37.07, Vernon's Ann.C.C.P., and has filed a motion for probation pursuant to Article 27.02, Sec. 7, V.A.C.C.P. and Article 42.12, Sec. 3a, V.A.C.C.P., which was done here, probation is thereby made a part of that range.

 By his fifth ground of error appellant complains of the following comment by the prosecutor to the jury panel on voir dire examination:

". . . the law allows me to comment in any way upon his (appellant's) failure to testify if he does."

The state points out that a hearing was had wherein it was found that the court reporter was in error in typing this comment from his notes. The comment was corrected to read:

". . . the law does not allow me to comment in any way upon his failure to testify if he does."

No error is shown.

Appellant contends in his sixth ground of error that the conduct of the prosecutor in calling a particular witness, Meredith Mack, for no reason but to prejudice the jury by the witness' appearance, constitutes reversible error.

The record reflects that the state called Meredith Mack as a character witness during the punishment stage of the trial. He was asked whether he knew the appellant and whether he had an opinion as to the reputation of appellant for being a peaceful and law-abiding citizen. When he answered that he had no opinion, the state passed him. There was no objection by appellant and we perceive no error.

Appellant urges in his seventh ground of error that it was error to admit photographs of appellant wherein he was shown to have long hair. He argues that since his hair was short at time of trial, and since identity was not an issue, the pictures were admitted for no other purpose than to prejudice the jury. A predicate was laid that the pictures accurately portrayed the appearance of the appellant at the time of the arrest.

In Vavra v. State, 171 Tex.Cr.R. 24, 343 S.W.2d 709, the following is written:

". . . Acts done, statements and *appearance* of the participants, and other similar circumstances are all admissible as part of the res gestae when a witness narrates the events surrounding an offense." (Emphasis supplied.)

A verbal description of appellant's appearance at the time of arrest is admissible; so too is the photograph that accurately depicts such. Martin v. State, Tex. Cr.App., 475 S.W.2d 265; Lanham v. State, Tex.Cr.App., 474 S.W.2d 197. See also, Denny v. State, Tex.Cr.App., 473 S. W.2d 503 (reversed on other grounds).

No reversible error having been shown, the judgment is affirmed.