Herman Calvin SMITH, Appellant,

v.

The STATE of Texas, Appellee.

No. 47763.

Court of Criminal Appeals of Texas.

Sept. 18, 1974.

Rehearing Denied Oct. 9, 1974.

Charles W. Tessmer and Ronald L. Goranson, Dallas (on appeal only), William H. Vitz, McKinney, for appellant.

Tom O'Connell, Dist. Atty., Elliott Knott and Robert Dunn, Asst. Dist. Attys., McKinney, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DAVIS, Commissioner.

Appeal is taken from a conviction for murder. Punishment was assessed at imprisonment for life.

A death penalty was assessed by the jury on May 15, 1970. The death penalty was commuted to imprisonment for life by the Honorable Preston Smith, Governor of Texas, by proclamation dated October 20, 1972.

The record reflects that police officers Ashley and Burk responded to a call to go to 1008 Daniels Street in McKinney, where they were informed by appellant upon arrival that Wilfred Olliphant had shot at him. The officers entered the house of Mrs. Baby Ruth Black, arrested Olliphant, and walked toward the police car with him. At this juncture, appellant advised Ashley and Burk that this was the person who had shot at him and that he, appellant, wanted to kill him. Ashley testified that he saw a pistol in appellant's hand, heard a gunshot and felt a pain in his abdomen. Ashley recounted the events which occurred thereafter. Burk struck appellant with a shotgun. Appellant shot Burk. Ashley shot appellant.

Officer Burk died as the result of gunshot wounds. Appellant, testifying in his

own behalf, stated that he was firing at Olliphant when he hit Ashley and that his gun accidentally discharged when Burk was hit.

Appellant's first twelve contentions are directed to the refusal of the judge to permit appellant's counsel to ask the following question to twelve prospective jurors during individual voir dire examination:

"In the event that you as a juror believe from the evidence that the defendant is guilty and so find him guilty of the offense of murder with malice as charged in the indictment, could you then, in a proper case where the facts warrant it and the circumstances justify it, consider granting a two year probated sentence where you believe from the evidence beyond a reasonable doubt that the defendant is guilty of murder with malice?"

The record reflects that after individual voir dire examination of fifty-one prospective jurors the court announced that it was going "to qualify them [veniremen] on the range of punishment" and denied appellant's request to ask the aforementioned question. The court, in each of the complained-of individual voir dire examinations, qualified the veniremen as to the range of punishment, including two years probation and death. The questions were all asked specifically by the court and answered unequivocally by the veniremen. Appellant does not urge that the court failed to properly qualify veniremen as to the range of punishment but contends that the right of being heard by counsel carries with it the right of counsel to personally interrogate the members of the jury panel.

At the outset we reject the State's argument that these contentions should be denied because the appellant is unable to prove "harm" by showing his peremptory challenges were exhausted or that he had to accept an objectionable juror. Since a question attempting to elicit grounds for a challenge for cause is necessarily also elic-

iting "grounds" for peremptory challenges (which may be exercised arbitrarily, Art. 35.14, Vernon's Ann.C.C.P.), the harm in preventing answers to any proper question is the inability to intelligently make use of the peremptory challenges. Meador v. State, 94 Tex.Cr.R. 608, 253 S.W. 297 (Tex.Cr.App.1923); Ortega v. State, 462 S.W.2d 296 (Tex.Cr.App.1970). Appellant is entitled to knowledge of the answers, regardless of content, to ensure knowing challenges. Mathis v. State, 167 Tex.Cr.R. 627, 322 S.W.2d 629 (Tex.Cr.App.1959). If the question is proper, an answer denied prevents intelligent use of the peremptory challenges and harm is shown.

The necessity to question freely and broadly on voir dire in order to decide intelligently when to use one's peremptory challenges has been firmly established as a concomitant to the constitutional right to counsel. DeLaRosa v. State, 414 S.W.2d 668 (Tex.Cr.App.1967); Plair v. State, 102 Tex.Cr.R. 628, 279 S.W. 267 (1926); Reich v. State, 94 Tex.Cr.R. 449, 251 S.W. 1072 (1923); Meador v. State, supra.

"As a general rule great latitude should be allowed a party interrogating a venire in order to enable his counsel to determine the desirability of exercising on the members thereof his right of peremptory challenge, and this court does not look with favor on any unreasonable limitation of this right." Kincaid v. State, 103 Tex.Cr.R. 485, 281 S.W. 855, 856 (1926)

The permissible areas of interrogation to determine the use of peremptory challenges are broad and not to be unnecessarily limited. Asking about bias against parts of the range of punishment is certainly permissible. Indeed, bias against any of the law upon which the defendant is to rely is ground for a challenge for cause and a proper matter for query. Art. 35.16(c)(2), V.A.C.C.P.; Reeves v. State, 491 S.W.2d 157 (Tex.Cr.App.1973).

However, the decision as to the propriety of any question is left to the dis-

cretion of the trial court and the only review will be for abuse of that discretion. Reich v. State, supra; Livingston v. State, 152 Tex.Cr.R. 302, 214 S.W.2d 119 (Tex.Cr.App.1948); Grizzell v. State, 164 Tex.Cr.R. 362, 298 S.W.2d 816 (Tex.Cr.App. 1957); Johnson v. State, 467 S.W.2d 247 (Tex.Cr.App.1971). The discretion is abused when a proper question about a proper area of inquiry is prohibited.

■ While appellant certainly has the right to examine the jurors to the end of forming his own conclusion, Mathis v. State, supra; Olliff v. State, 161 Tex.Cr.R. 336, 276 S.W.2d 839 (1954); Carlis v. State, 121 Tex.Cr.R. 290, 51 S.W.2d 729 (1932); Pendergrass v. State, 121 Tex.Cr.R. 213, 48 S.W.2d 997 (1932), there is also no doubt that reasonable controls may be exercised by the trial judge to limit the questioning for various reasons. Dworaczyk v. State, 172 Tex.Cr.R. 142, 354 S.W.2d 937 (1962); Broussard v. State, 166 Tex.Cr.R. 224, 312 S.W.2d 664 (1958); Barry v. State, 165 Tex.Cr.R. 204, 305 S.W.2d 580 (1957); Kincaid v. State, supra; Johnson · v. State, supra; McCarter v. State, 478 S.W.2d 524 (Tex.Cr.App.1972); Lewis v. State, 488 S.W.2d 740 (Tex.Cr.App.1973). Voir dire examination can become the lengthiest part of the proceeding (here comprising over seven hundred pages of the record). To curb some prolixity, it is recognized that courts need have a discretionary area within which the examination might be reasonably limited. One basis for such a limitation is duplication of questioning. Here the trial judge carefully qualified each juror on the entire range of punishment, emphasizing the possible consideration of a two-year probation. Counsel attempted to do the same thing again with no injection of new matter or expansion upon old. There is no error in prohibiting duplicitous questions, where investigation into possibly proper or fruitful matters is not entirely prevented. Barry v. State, supra; Kincaid v. State, supra; Cook v. State, 398 S.W.2d 284 (Tex.Cr.App.1966), and Clowers v. State, 146 Tex.Cr.R. 1, 171 S.W.2d 143 (1943).

Appellant cites several cases for the premise that the trial judge may not limit voir dire beyond requiring relevancy. In Meador v. State, supra, and Mathis v. State, supra, questioning was precluded totally in appropriate areas of investigation for peremptive challenges or challenges for cause. Unlike here, there was no duplication of earlier questioning and no earlier unequivocal answers. Appellant also cites DeLaRosa v. State, supra, as authority for his position; however, the error there was a patently unreasonable limiting of the time for voir dire to thirty minutes, permitting little intelligent questioning.

In Plair v. State, supra, the trial court was held to be in error for refusing to allow the appellant to inquire of the venire their attitudes concerning suspended sentences after the judge had asked the panel generally about it and where it was in issue in the case. However, it should be noted that in *Plair* the judge's questioning was directed to the panel as a whole. See Carlis v. State, supra.

■ In the instant case the State sought the death penalty. Under Art. 35.17, V.A.C.C.P.,[1] the appellant was entitled to exam-

---

1. Article 35.17, V.A.C.C.P. in effect at the time of this trial provided:
 "1. When the court in its discretion so directs, in a misdemeanor or non-capital felony case, or in a capital case in which the state's attorney has made known that he will not seek the death penalty, the state and defendant shall conduct the voir dire examination of prospective jurors in the presence of the entire panel.

 "2. When the state's attorney has made known that he will seek the death penalty, the court shall propound to the entire panel of prospective jurors questions concerning the principles, as applicable to the case on trial, of reasonable doubt, burden of proof, return of indictment by grand jury, presumption of innocence, and opinion. Then, on demand of the State or defendant, either is entitled to examine each juror on voir

ine each juror individually on voir dire apart from the entire panel. This right was accorded appellant except as to the matter of range of punishment to certain prospective jurors where such question had been fully covered in the individual examination of the veniremen by the court. While counsel is entitled to further question a prospective juror on principles propounded by the court,[2] we do not perceive such right of individual examination to extend to the asking of duplicitous questions. The specificity of the court's examination of each venireman and the similarity of same to the question appellant sought to pursue lead us to the conclusion that the court's action does not constitute an abuse of discretion and require reversal.

■ In his thirteenth contention, appellant urges that the questioning of character witness Reverend M. L. Bailey by the prosecutor requires reversal. The record reflects the following occurred:

"Q. Mr. Bailey, have you heard that Herman Calvin Smith was accused of killing E. J. Crockett?

\*　　\*　　\*　　\*　　\*　　\*

"A. I have heard that.

"Q. And knowing that, is it still your testimony that in your opinion he is a peaceful and law abiding citizen?"

Appellant urges that by use of the phrase "knowing that" the prosecutor implied that the facts of the accusation were true.

■ "Have you heard" questions are permitted only to test the credibility of the witness' testimony concerning the defendant's reputation, Brown v. State, 477 S.W. 2d 617 (Tex.Cr.App.1972). Counsel may not inquire as to the witness' knowledge of the incident, only whether he has heard

about it. Brown, supra. Indeed, the mere asking of an improperly framed question asserting as a matter of fact that the defendant committed a specific act of misconduct is reversible error. Webber v. State, 472 S.W.2d 136 (Tex.Cr.App.1971).

Here the question includes reference only to an accusation. A fair interpretation of the reference to "knowing that" is that it concerns only whether knowing of the accusation has affected witness Bailey's opinion. It is not an assertion of the fact of the commission of the act. No error is shown.

■ Appellant's fourteenth contention is that the trial court erred in submitting an inadequate charge on transferred intent in response to a question from the jury. The jury's question was:

"Does 'malice aforethought' apply regardless to whom it is directed, or does it apply only if directed toward the deceased?"

The court answered:

"Malice aforethought need not be expressly directed toward the individual whose life is taken. It is sufficient if the party charged with murder has a state of mind which reflects a heart which has no regard for social duty and is fatally bent on wrong-doing, provided such party also has the intention to kill. Both the state of mind referred to and the intent to kill may be inferred from the circumstances surrounding the killing."

The appellant's contention is that the failure to properly place the burden of proof in this particular instruction is fundamental error.

■ Appellant concedes there was no proper objection to this instruction made at

dire individually and apart from the entire panel, and may further question the juror on the principles propounded by the court. Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722."

2. Moore v. State, 98 Tex.Cr.R. 162, 265 S.W. 385 (1924); Art. 35.17, supra.

trial. Without such objection, under Art. 36.19, V.A.C.C.P., only fundamental error requires reversal. Whitson v. State, 495 S.W.2d 944 (Tex.Cr.App.1973); Mendoza v. State, 491 S.W.2d 888 (Tex.Cr.App. 1973); Fennell v. State, 424 S.W.2d 631 (Tex.Cr.App.1968). Fundamental error is an error "calculated to injure the rights of the appellant to the extent that he has not had a fair and impartial trial." Ross v. State, 487 S.W.2d 744 (Tex.Cr.App.1972).

■ Examples of fundamental error in a court's charge are reflected in the following cases: Mendoza v. State, supra (where charge authorized a conviction for an assault with intent to murder without requiring the jury to find an intent to kill); Ross v. State, supra (where defendant was convicted of a different crime than that for which he was indicted); Fennell v. State, supra (where the court only charged abstractly about self-defense and did not apply the law to the facts); Garza v. State, 162 Tex.Cr.R. 655, 288 S.W.2d 785 (1956) (where the court's charge in an illegal possession of liquor in a dry county case permitted conviction only on the basis of defendant's possession of beer bottles). While it may be error to fail to instruct on the law of reasonable doubt in charging affirmative defenses, without a proper objection at trial, the charge is judged as a whole and not reviewed as to its parts standing alone. Whitson v. State, supra (where this Court expressly stated it did not approve of the charge used but could not conclude it was fundamental error); Washington v. State, 450 S.W.2d 630 (Tex.Cr.App.1970); Daniel v. State, 486 S.W.2d 944 (Tex.Cr.App.1972), cert. denied, 410 U.S. 958, 93 S.Ct. 1433, 35 L. Ed.2d 692; Henderson v. State, 402 S.W.2d 180 (Tex.Cr.App.1966). Taking the charge as a whole, we cannot conclude that fundamental error exists in the charge in the instant case. Appellant's right to a fair and impartial trial was adequately protected by the instructions concerning burden of proof contained in the charge. While we do not approve of the charge given, we cannot conclude it was fundamental error.

■ Appellant's fifteenth contention is based upon the trial court's failure to read in open court the instruction given in answer to a question from the jury. Appellant objected only to the substance of the response. Article 36.27, V.A.C.C.P. requires the court's answer to the jury "be read in open court unless expressly waived by the defendant." There is nothing in the record regarding an express waiver and appellant contends that mandatory provisions of the statute have been violated and require reversal.

■ The giving of additional instructions to a jury by the trial court without compliance with the statutes requiring such communication to be in open court and in the presence of the defendant constitutes reversible error. Brown v. State, 505 S. W.2d 850 (Tex.Cr.App.1974); Allaben v. State, 418 S.W.2d 517 (Tex.Cr.App.1967); Franklin v. State, 363 S.W.2d 137 (Tex. Cr.App.1963). However, it is incumbent upon a defendant to bring the easily correctable error to the judge's attention by objection or formal bill of exception or the acts of the trial court are presumed consistent with the statute. Smith v. State, 474 S.W.2d 486 (Tex.Cr.App.1972); Lipscomb v. State, 467 S.W.2d 417 (Tex.Cr. App.1971); Verret v. State, 470 S.W.2d 883 (Tex.Cr.App.1971); Rodriquez v. State, 500 S.W.2d 517 (Tex.Cr.App.1973); Hancock v. State, 120 Tex.Cr.R. 162, 47 S.W.2d 299 (1932); McClellan v. State, 118 Tex.Cr.R. 473, 40 S.W.2d 87 (1931).

There is no showing here by objection or bill of exception that appellant failed expressly to waive the reading of the court's instruction. No reversible error is shown.

■ Appellant's contentions seventeen and eighteen are based on his claim that the trial court committed reversible error by allowing testimony on what are urged to be unrelated offenses. The prosecutor's

830

questioning of appellant concerning carrying a concealed weapon was objected to by his counsel as, first, "irrelevant and immaterial and incompetent and improper" and then as "irrelevant and immaterial and prejudicial." The prosecutor's questioning of appellant on the extent of his possession of liquor in Collin County, a "dry" county, was objected to as "irrelevant and immaterial."

Repeated cases have held that a general objection such as the type used here preserves no error for review. Hicks v. State, 493 S.W.2d 833 (Tex.Cr.App.1973); Dickson v. State, 492 S.W.2d 267 (Tex.Cr.App. 1973).

 Further, this Court has repeatedly held that the grounds of error in one's appellate brief must comport to the objections by counsel at trial. Campbell v. State, 492 S.W.2d 956 (Tex.Cr.App.1973); Gondek v. State, 491 S.W.2d 676 (Tex.Cr. App.1973); Rawlinson v. State, 487 S.W. 2d 341 (Tex.Cr.App.1972). The trial objections here of irrelevancy, incompetency, impropriety and prejudice have been converted on appeal to claims of assertion of an extraneous offense. Nothing is preserved for review.

 Appellant's nineteenth contention is based on the final argument by the prosecutor as follows:

"... I want you to consider the pistol. I want you to consider the spent cartridges. I want you to consider the several cartridges that misfired. And that the only reason that Herman Smith didn't kill anybody else out there that night was, one, he got shot by Officer Ashley in self defense and two, he ran out of ammunition. And he told Officer Ashley—

"(MR. BARCLAY): We object to that, Your Honor. That is completely outside of the record. We make an objection to that on the ground that it is prejudicial

and inflammatory, and ask the Court to instruct the jury to disregard it.

"(THE COURT): The jury will be the sole judge of what the evidence actually shows regarding running out of ammunition. You will disregard any statement of Mr. O'Connell that's contrary thereto."

Appellant moved for a mistrial, which was denied by the court. Appellant argues that the assertion that the appellant ran out of ammunition is not supported in the record and requires reversal.

The record reflects that of eight rounds in the appellant's gun, five had been fired, two had misfired and one was untouched. Error, if any, was rendered harmless by the court's admonition to the jury. Overton v. State, 490 S.W.2d 556 (Tex.Cr.App. 1973); Bradley v. State, 489 S.W.2d 896 (Tex.Cr.App.1973); Hodge v. State, 488 S.W.2d 779 (Tex.Cr.App.1973); Cunningham v. State, 484 S.W.2d 906 (Tex.Cr. App.1972).

 In his twentieth contention appellant again asserts improper jury argument by the prosecutor:

"Further, that that night Herman Smith was going to kill Punkin and he was going to kill Tommy Ashley, and almost did. And he did kill Ray Burk. And he would have killed anybody else that night that got in his way. But—

"(MR. BARCLAY): Your Honor, I am going to have to make an objection to the line of questioning. It is completely outside the record.

"(THE COURT): Overruled. The jury will understand that this is Mr. O'Connell's conclusions only."

Appellant's claim is that the argument that Herman Smith would have killed anybody else who got in his way asserted facts not in the record and requires reversal.

Reasonable deductions from evidence at trial are permissible in argument. Graves v. State, 513 S.W.2d 57 (1974); Hoagland v. State, 494 S.W.2d 186 (Tex. Cr.App.1973); Alejandro v. State, 493 S. W.2d 230 (Tex.Cr.App.1973); Archer v. State, 474 S.W.2d 484 (Tex.Cr.App.1972).

It is a reasonable deduction from the evidence here that appellant would have killed anyone who got in the way of his attempt to kill Olliphant. Particular emphasis is laid on the number of rounds that were fired or attempted to be fired and the fact that both officers were shot. No error is shown.

In appellant's twenty-first and last ground of error it is urged that he was not allowed to qualify prospective juror Shanks on whether the appellant should be required to introduce evidence to prove innocence.

Appellant's contention is directed to the court's refusal to allow the appellant to question the prospective juror as follows:

"Q. . . . After the State presents their evidence and presents their testimony and after all the testimony is in and they rest their case, at that time would you as a prospective juror expect the defense to present testimony and evidence to show that the Defendant is innocent?"

The prosecutor's objection to the question was sustained by the court. The appellant then asked:

"Q. . . . If you are on this jury and after you hear all the testimony that is presented by the State and they call their witnesses one at a time to testify, when they conclude with their case and they put on all their evidence—because they have to quit sometime—and they conclude with their testimony and they rest—that's when they stop— would you as a juror require the Defendant to present testimony and evidence in his own behalf to show that he is innocent?"

The record reflects that prior to the foregoing questions the following had transpired on voir dire examination of the prospective juror by appellant:

"Q. . . . Now the burden of proving him guilty rests entirely upon the prosecution. They have the burden of proving to you that he is guilty of the offense just as he is charged in the indictment. . . . They have got to prove a murder case.

Now the law provides that they must prove that to you as a member of the jury beyond a reasonable doubt. And if they fail to do that, the law says you must find the defendant not guilty and acquit him. You see, the entire burden is upon the State. There is no burden placed upon the defense to show that he is innocent.

Now, do you believe that's a good law?

"A. Yes."

The record reflects additional questions were propounded to the prospective juror by appellant regarding burden of proof after the complained-of action by the court as follows:

"Q. All right. Now, the burden is placed upon the prosecution. They must prove to you by legal and competent and admissible evidence and testimony that the man is guilty, and they must prove that beyond a reasonable doubt.

Now, at the conclusion of the case, when all the testimony and the evidence is in, all of it is submitted to you, if you go back and deliberate and sift through all the evidence that you have heard and if you have a doubt as to the guilt or

the innocence of the defendant, will you resolve that doubt in favor of the defendant and say by your verdict 'not guilty'?

"A. Well, to me the man would be innocent until proven guilty. So I would have to say 'not guilty'.

"Q. All right. Now you don't have any reservations about that, do you?

"A. No."

\* \* \* \* \* \*

"Q. Now, before the State can get a conviction for anything they have got to prove up all the essential elements of the indictment. This indictment alleges that it occurred on or about January 30th in Collin County, that Herman Smith murdered with malice aforethought Milligan Ray Burk. Now they've got to prove all of that, every bit of it, before they can get a conviction. You must be convinced beyond a reasonable doubt.

You have already told me that if you have a reasonable doubt at the conclusion of the testimony that you will say by your verdict 'not guilty'. Is that right?

"A. Yes."

The foregoing questions and answers reflect that the law concerning burden of proof was fully covered. The prospective juror was fully apprised of the fact that there was no burden on appellant to prove his innocence, and by her answer to appellant's questions demonstrated that she had no reservations about the law in this area. Under these circumstances we find that the complained-of action by the trial court does not constitute an abuse of discretion. (See authorities heretofore cited under appellant's first contentions relative to abuse of discretion by trial court in limiting voir dire examination.)

Finding no reversible error, the judgment is affirmed.

Opinion approved by the Court.