GRADY CARPENTER v. THE STATE.

No. 17616. Delivered June 12, 1935.
Rehearing Denied November 20, 1935.

398

The opinion states the case.

*Jno. Lee Smith,* of Throckmorton, and *T. R. O'Dell* and *Davis & Davis,* all of Haskell, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for fifty years.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed A. B. Hill by shooting him with a gun.

Deceased, who was about 60 years of age, was the father-in-law of appellant. For seven or eight months prior to the homicide he had been living in appellant's home. It appears that appellant and his wife had been having domestic difficulties and were practically separated at the time of the homicide. According to appellant's version, his wife had promised to leave Throckmorton County with him and deceased had demurred. He testified further that he had been advised that deceased had threatened to kill him. On the night of the homicide appellant and his wife had a quarrel. According to the version of two of appellant's children, appellant seized a shotgun and, without provocation, shot deceased, who was sitting in a chair by a table reading. Appellant testified that while he and his wife were quarreling deceased grabbed a

butcher knife and came toward him; that he told deceased to stop but he continued to advance; that he fired two shots in rapid succession, the second of which took effect; that the light went out and he did not see deceased fall. A witness for the State testified that appellant came to his house immediately after the homicide and told him what he had done. He asked appellant if he had killed his whole family. Appellant replied: "No, I shot hell out of old man Hill (deceased)." When the body of deceased was discovered the chair in which he had been sitting had turned over. Deceased had fallen near a table and was lying on the side of his face. He had his glasses on and there was a magazine on the floor by him. The chair which had turned over was at his feet. There was a butcher knife within two feet of the body on the floor near the table leg.

There were no exceptions to the charge of the court.

Bills of exception 1 and 2 are concerned with the action of the trial court in overruling appellant's challenges for cause to two jurors and forcing the exercise of peremptory challenges on them. It is recited in the bills that after exhausting his peremptory challenges appellant was required to accept various jurors who were not desired by him. To make such a showing as will demand the attention of this court it is essential that bills of exception relating to the erroneous overruling of challenges for cause be so framed as to bring before the court knowledge of the facts upon which it is claimed that the juror forced upon the accused is "objectionable." In short, the bill must show that the examination of the objectionable juror evidenced some degree of disqualification, such, for example, as the formation of some character of opinion as to the guilt or innocence of the accused. Johnson v. State, 1 S. W. (2d) 896. The bills under consideration in failing to make such showing are insufficient.

It is shown in bill of exception No. 4a that Clay Carpenter, a son of appellant, who was 9 years of age, testified for the State. Appellant objected to the court permitting the witness to testify on the ground, among others, that it was shown that he did not understand the meaning of an oath. It appears that upon proper examination the witness testified he was in the fourth grade at school; that he knew the difference between right and wrong; that he was aware that when called as a witness it was incumbent upon him to tell the truth. In effect, he testified that he knew that he would be punished if he did not testify truthfully. The opinion is expressed that the bill

fails to show an abuse of discretion on the part of the trial judge.

Bill of exception 10 reflects the fact that the county attorney stated in argument that in his opinion one who committed murder ought to be killed and that if the law did not kill him, his relatives ought to kill him. In view of the fact that appellant's objection was promptly sustained and the court instructed the jury to disregard the remarks, we would not feel warranted in holding that reversible error is presented.

Bill of exception 14 shows that the objection to the argument set forth therein was sustained and the jury instructed to disregard the remarks of the county attorney to the effect that the jury ought to give a death penalty, as appellant would probably be pardoned if sent to the penitentiary. If the remarks were improper, it is observed that the death penalty was not assessed. Hence it would appear that the jury were not impressed with the reasons urged for assessing such penalty. Under the circumstances, we think the bill fails to reflect reversible error.

Appellant's objection to the following remarks of the county attorney was overruled: "It was the law of this State for fifty years that the defendant was not allowed to go on the witness stand. The defendant would not tell the truth; they knew it, that the defendant wouldn't tell the truth anyway. You know that is true he wouldn't, and I do not believe you would—they went on that theory, and that theory is good today." If the theory of the law withholding from the accused the privilege of testifying in his own behalf was that he would not tell the truth, it might plausibly be argued that the Legislature, in removing his incompetency as a witness, entertained the view that the former rule had been based on a false hypothesis. Conceding the argument to be improper, we are unable to reach the conclusion that it could have influenced the jury in rejecting appellant's testimony. Hence we would not feel warranted in holding that a reversal should follow.

Other bills are found in the record which are concerned with the argument of counsel for the State. In most instances the objections to the argument were sustained and the jury instructed not to consider same. An examination of said bills leads us to the conclusion that they do not present error.

Appellant's motion for a new trial was in part predicated upon newly discovered evidence. It was averred that one O. T. Miller would testify that he was present at the time of the homicide and saw deceased seize a knife from the table

in the room where the killing occurred and start in the direction of where he heard another man's voice; that he heard somebody holler "Stop," and about that time heard a gun fire twice; that he thought that the man who was going forward with the knife fell to the floor. It was further averred that the witness was on his way to visit a friend in the Bush Knob community and stopped at the house of appellant to make inquiry as to where his friend lived; that as he stepped up on the porch of appellant's home the difficulty resulting in the homicide took place. Attached to the motion was the affidavit of the witness, which, omitting the formal parts, reads as follows: "I live in Young County, Texas. I was at the home of Grady Carpenter, in Throckmorton County, Texas, on the night of the 26th day of May, 1934, sometime between eight and nine o'clock. I was on my way to visit a friend in the Bush Knob community and stopped at the home of Grady Carpenter to ask the best way to the friend's home. I did not know the exact way to my friend's house and stopped to find out where he lived. I know now that the house was Grady Carpenter's at that time. I stepped upon a small porch to knock at the door and when I done that I saw an old man fifty or sixty years old get up from his chair by a table in the center of the north room of the house and take hold of a knife lying on the table and start forward. I heard somebody say 'Stop.' The next minute a gun fired twice. I saw the old man fall and the light went out. I got away from there as fast as I could. I did not tell anybody about what I had seen until after the trial of the case of Grady Carpenter at Throckmorton. I was afraid to tell anybody about what I had seen for fear that I might be accused of doing the shooting. Was not afraid to tell what I knew after I learned that Grady Carpenter swore he fired the shots himself."

The court heard evidence on the motion, but the alleged newly discovered witness did not appear and testify and no reason for not bringing him forward is assigned. However, his affidavit was introduced. Touching the discovery of the fact that the witness would testify as alleged, one L. B. Redwine testified in substance as follows: A few days before the filing of the motion for a new trial he had gone from Throckmorton County to Young County with Rife Carpenter and Pat Jernigan. While in the town of Graham he talked to O. T. Miller, who told him he (Miller) would make a good witness as he was present and witnessed the homicide. At this juncture, we quote from the direct-examination of the witness

Redwine by appellant's counsel, as follows: "He told me he would make a good witness, and I asked him why he would. He told me that on the night of the killing he was in Throckmorton County, and that he had gotten out near the Grady Carpenter home and stopped to inquire where a certain person lived. He said he rode out to that road and got out and stopped there at the home. He was hunting Oscar Pick's, hunting the way there. He told me what he saw. He first went up and he looked in and saw Grady Carpenter in there. And he said that he heard Mr. Hill say something, he didn't know what, and that Mr. Hill grabbed a butcher knife and started toward Grady. * * * He did not know Hill. He said that he seen a man grab a butcher knife and started toward him, and he told him to stop. I think he said he heard two shots fired. Then this man that told me this said he run off. He said he didn't let anybody know about his presence there that night, not to Grady or any other person. He didn't let anybody know of his presence there until after this trial. He said the reason he didn't was that he didn't want to be connected, he was afraid he would be implicated."

Pat Jernigan, who was a witness in behalf of appellant on the main trial, was not called to testify on the motion for a new trial, nor was Rife Carpenter. The house in which deceased was killed had two rooms,—a north room and a south room. There was a porch on the east side of the north room, which was used as a front entrance to the house. This porch was screened. There was no open porch to the house at all. There was a door in the screened porch which was approximately in front of the door from the porch into the north room. There was a window on the east side of the north room, which was about three feet from the northeast corner of said room. In order to see the table where the deceased had been reading prior to the time he was killed and the place where deceased fell when shot, it would have been necessary for one going to the house to have gone through the screen door and stood in the door to the north room, or else to have stood near the south door frame. The foregoing was the effect of the testimony heard by the court on the motion for a new trial. It is observed that in the motion for a new trial appellant alleged that the newly discovered witness would testify that he heard a gun fire twice and that he *thought* that the man who was going forward fell to the floor. In his affidavit, the witness stated: *"I saw the old man fall and the light went out."* In short, according to appellant's averments in the motion the

witness thought that deceased fell to the floor, whereas in the affidavit, the witness said he saw him fall. On the trial witnesses for the State testified that after the first shot was fired the light went out and that when the second shot was fired, which apparenly was the one that killed deceased, it was dark. Appellant testified that he fired two shots in quick succession; that the first shot did not take effect, but that the second did; that immediately after the second shot was fired the light went out; that he did not see deceased fall, and did not know where he fell at the time.

We quote from Hughes v. State, 50 S. W. (2d) 824, as follows: "Among other things requisite before a new trial will be granted for alleged newly discovered evidence are that the testimony claimed to have been discovered since the trial must (a) probably be true, and (b) it must appear reasonably probable, and that it would change the result upon another trial. See Branch's Ann. Tex. P. C. sec. 192, and cases thereunder cited; Nothaf v. State, 91 Texas Crim. Rep., 378, 239 S. W., 215, 23 A. L. R., 1374; Gregory v. State, 105 Texas Crim. Rep., 674, 290 S. W., 176; McDowell v. State, 96 Texas Crim. Rep., 512, 258 S. W., 186. The probable effect of claimed newly discovered evidence is primarily for the trial judge who passes upon the motion for new trial, and the appellate court will not interfere with his action in denying the motion, if under all the facts no abuse of his judicial discretion is shown."

We quote from sec. 200, Branch's Annotated Penal Code, as follows: "Where it clearly appears that the newly discovered testimony is not probably true, either by reason of the facts proven at the trial or by the controverting affidavits on the motion, or otherwise, a new trial sought on that ground is properly denied."

Being of the opinion that the trial judge did not abuse his discretion in applying the rules we have quoted to the alleged newly discovered evidence, we are constrained to uphold his action in overruling the motion for new trial.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant presents in his motion

many of the matters decided by us in our original opinion, with the complaint that we were not correct. He insists that we were wrong in holding that his bills of exception 1 and 2, complaining of the overruling of his challenges for cause to certain jurors, showed no error. The bills are qualified by the statement of the trial judge that after holding the jurors in question qualified, and overruling appellant's challenges for cause, the jurors Keeter and Hulse, stated in appellant's bills of exception to be objectionable jurors forced upon him,— were accepted by appellant, and further that no juror was selected to sit in the trial of this case to whom objection was made by the appellant. The qualification completely overturns appellant's contention, and supports our holding that no error was shown. In addition, we observe that the authorities cited by appellant in support of his contention upon this point, are upon facts entirely dissimilar to those before us, and hence the authorities are not in point.

Appellant renews complaint at our disposition of his bill of exceptions No. 4. Appellant wanted to ask each juror: "If you were on trial for the offense of murder, would you be willing to be tried by a juror who had the same attitude of mind toward you as you now have with reference to this defendant?" We have no hesitation in again affirming that such question was improper, and the court correctly held it so. The case of Plair v. State, 279 S. W., 267, cited by appellant, has no application.

Appellant also says we erred in disposing of his bill of exceptions No. 10. The cases cited by appellant in support of his position are cases in which the argument complained of contained the personal opinion of the attorney making the argument as to some fact pertinent to the guilt of the accused of the offense charged. No such opinion is expressed in the argument set out in bill of exceptions 10, and no hurtful fact was stated in the argument pertaining to the particular case. It is clear that the prosecuting attorney was merely expressing his opinion about the law and what it ought to allow and forbid. The jury could not have misunderstood same. The matter was promptly suppressed, and it seems incapable of any injury. The authorities cited by appellant, to-wit: McDuff v. State, 281 S. W., 1073; Masten v. State, 271 S. W., 922; Stanchel v. State, 231 S. W., 120; Atkeison v. State, 273 S. W., 596, and Vargas v. State, 79 S. W. (2d) 860, are in no sense similar in principle or upon facts to the case before us.

The case of Maynard v. State, 293 S. W., 1104, is in no

way authority supporting appellant's contention that we erred in our disposition of his bill of exceptions No. 14. As stated in our original opinion, the verdict of the jury shows their disagreement with counsel for the State, and is such verdict as clearly evidences that they were not influenced by his argument.

We reaffirm what we said regarding the point made in appellant's bill of exceptions No. 6. Nothing in the record suggests that the remark of the State's attorney influenced the verdict of the jury. The penalty fixed by them is in no way excessive.

We are not impressed by appellant's complaint that we erred in not reversing this case because in the argument the State's attorney referred to deceased as a good man. We have examined appellant's bills of exception 15, 19, 11, 12, 13 and 20, and note that in said bills it is stated that at the close of the argument of the State's attorney appellant took exceptions to certain parts thereof. We have an unbroken line of authorities in this State holding that the attorney for the appellant can not wait until the close of the argument to make his objection and take his exception to the argument which he deems wrong. The objection should be made and the exception taken when the particular argument is uttered in the presence of the jury. Otherwise the matter would have passed out of the memory of the attorney making the argument, and possibly not be remembered by the court hearing the argument, or not hearing it because he was occupied in some other matter. Reference to Smith v. State, 104 Texas Crim. Rep., 616; Sears v. State, 106 Texas Crim. Rep., 219; Simmons v. State, 248 S. W., 392; Harris v. State, 249 S. W., 485; Salinas v. State, 18 S. W. (2d) 663; Thompson v. State, 34 S. W. (2d) 250, and Crowley v. State, 35 S. W. (2d) 437, discloses the authorities holding that the bills of exception in form as they appear in this record are not sufficient.

We have again carefully gone over appellant's complaint of the refusal of his new trial based upon newly discovered evidence, and are still of opinion that the testimony contained in the affidavit offered by appellant was so combated by the testimony offered by the State, when the matter was heard before the trial court, as to bring the court's action, in refusing a new trial, entirely within his discretion.

The motion for rehearing will be overruled.

*Overruled.*