WILLIE CAESAR v. THE STATE.

No. 19492.  Delivered April 6, 1938.
Rehearing denied June 1, 1938.

The opinion states the case.

*Snell & Snell,* of Houston, and *Charles Fertsch,* of Hallettsville (*King C. Haynie,* of Houston, of counsel on appeal), for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, death.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed Tip M. Simmons by cutting him with a knife.

The deceased had been employed by the proprietor of a negro dance hall to keep order. On the 17th of June, 1936, about 1 A. M., a dance was in progress at the hall and deceased was present pursuant to his employment. While he and the proprietor were talking some of the negroes engaged in a fight. Deceased immediately admonished them that fighting must cease. Mattie Richardson, who was participating in the difficulty, was brought to the door by a negro man. Clarence Johnson, another

negro, who was outside, "snatched her out of the door and she fell to the ground." She and Johnson then engaged in a fight while on the ground. At this juncture we quote from the testimony of one of the witnesses for the State: "Mr. Simmons [deceased] kept telling them to cut it out but they never did stop, and he hauled off and hit her with a pistol, I guess a pistol. * * * Then she stopped fighting Clarence and goes to fighting Mr. Simmons, goes into him and he knocked her down once or twice with the pistol. When he knocked her down she would get up and come back at him. Then the people, or a bunch of them, commenced clustering around; he kept telling them to get back, get back, if you don't I am going to kill some of you negroes. They kept clustering around and he made a shot. I noticed where he fired. He made a second shot. He kept telling them to get back, to get back. They ran up on him again and he made another shot. When he made that second shot he was shooting that same direction, kinda up the side of the wholesale house. At that time I came out of the door, coming out of the pool hall, this boy Grandville Johnson, he came running down the side of me. He said 'That man done shot me. Who is that man? He done shot me.' I said 'Where you shot at?' He jerked his shirt kinda back that way and I seen there was some skin kinda knocked up. Did not go into him, just knocked the hide up on him."

It appears from the testimony of the State that deceased backed away in an attempt to keep the negroes from attacking him. We quote from the testimony of a witness: "They were all arguing and cussing in general around there and seemed to be all cussing the white man." Other witnesses for the State testified that there were approximately seventy-five negroes near the deceased, some of them hollering "Kill that s— of a b—; kill him; get him." Finally a negro man grabbed deceased from behind. According to the testimony of a witness for the State, appellant came in and grabbed the deceased around the knees. While he was being held in the manner indicated Mattie Richardson and two negro men cut and stabbed him to death. Some of the witnesses for the State testified that appellant did not appear on the scene until after deceased had fallen. It was their version that appellant stomped the head of deceased and cursed him as he lay on the ground.

Testifying in his own behalf, appellant denied any participation in the difficulty, and further denied that he stomped the head of the deceased after he had fallen to the ground.

Witnesses testified that they saw blood on appellant's shoes after deceased had been killed, and he stated to them that he had stomped the deceased.

We are unable to agree with appellant that the testimony is not sufficient to support a conviction for murder with malice.

Appellant's next complaint, as shown in his brief and as evidenced by bill of exception No. 5, relates to the refusal of the trial court to permit his counsel to propound the following question: "Mr. Juror, if chosen as a juror in this case, will you or can you go into the jury box and hear the evidence and charge of the court and the argument of counsel, and retire to the jury room with other jurors, and after deliberations, return to the jury box and render a verdict that will be your own verdict based upon your analysis of the evidence and upon the charge of the court, such verdict being yours without regard as to what the verdict or conclusions of other jurors associated with you in the trial of this case?" It would appear from the last part of the inquiry that if the jurors had answered the question they would have pledged themselves to disregard the discussion, arguments and reasons advanced by their fellow jurors. The purpose of the law is to allow free discussion and interchange of opinions among jurors in order that proper verdicts may be rendered. See Jack v. State, 20 Texas Crim. App. 656. We are of opinion that the State's objection was properly sustained.

Appellant's second complaint relates to part of the definition of murder, as embraced in the charge of the court. Article 1256, P. C., reads in part as follows: "Murder shall be *distinguished* from every other species of homicide by the absence of circumstances which reduce the offense to negligent homicide or which excuse or justify the killing." (Italics ours.)

In the charge the court used the term "distinguishable." Appellant filed no written exceptions to the charge. This was required under the terms of Article 658, C. C. P. If such exceptions had been filed and overruled we would not feel warranted in holding that reversible error was presented.

In his brief appellant complains of the action of the court in permitting the order changing the venue to be introduced in evidence. We are unable to determine from the record whether the order was introduced in the absence of the jury. Be that as it may, it does not appear from any bill of exception in the record that appellant objected to its reception in evidence. In all cases, to invoke a review of the action of the trial court upon the receipt or rejection of evidence, a bill of exception is imperative. This is statutory. Article 667, C. C. P.; Fisher v. State, 1 S. W. (2d) 301.

Failing to find reversible error, the judgment is affirmed.

The foregoing opinion of the Commission of Appeals has

been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Because of the extreme punishment we have with much care re-examined the statement of facts and our opinion is confirmed that we are unauthorized to disturb the verdict. The evidence is conflicting as to appellant's connection with the transaction. He claims never to have touched deceased even after he was down. Other witnesses claim that appellant took no part in the conflict which resulted in deceased's death, but "stomped" him in the face after others had inflicted the mortal wounds. State's witnesses say another negro caught deceased from behind, pinning his arms, and that appellant then caught him around the knees, and that deceased was held in this manner while other negroes inflicted the death wounds with knives. The jury must of necessity settle the conflicting fact issues; it has done so in the present instance in favor of the State.

We feel impelled to overrule appellant's motion for rehearing.