Otis Joe POWELL, Appellant,

v.

The STATE of Texas, Appellee.

No. 67799.

Court of Criminal Appeals of Texas,
Panel No. 1.

April 14, 1982.

Travis W. Young, Fort Worth, for appellant.

Tim Curry, Dist. Atty., C. Chris Marshall, George Mackey, Randell Means and James J. Heinemann, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

Before ROBERTS, DALLY and TEAGUE, JJ.

OPINION

ROBERTS, Judge.

The appellant was indicted for burglary with a single enhancement paragraph which alleged that he had once before been convicted of a felony offense. He pleaded guilty to the charge and true to the enhancement paragraph. The jury assessed his punishment at confinement for twenty-five years.

The appellant does not challenge the sufficiency of the evidence. In his sole ground of error, he contends that the trial court erred in preventing him from asking prospective jurors about "their beliefs in the underlying theories of incarceration."

In general remarks addressed to the entire panel of prospective jurors, the appellant's counsel stated:

"... there are generally regarded as three major schools of thought on incarceration or sending someone to the penitentiary. One is rehabilitation, sending someone to the penitentiary in order to rehabilitate them so that they will be better when they get out. The other is punishment. They do wrong. They should be punished for what they did. The other one is deterrents [sic], making example of a law breaker so that other people will see what happens when people break the law. The three thoughts are punishment, rehabilitation and deterrents [sic].[1]

"Now, as I ask each of you individually the questions I am going to ask you, and perhaps some of you have never really

---

1. *Cf.* V.T.C.A., Penal Code, Sec. 1.02: "[T]he provisions of this code are intended, and shall be construed, to achieve the following objectives:

(1) to insure the public safety through:
(A) the deterrent influence of the penalties hereinafter provided;
(B) the rehabilitation of those convicted of violations of this code; and
(C) such punishments as may be necessary to prevent likely recurrence of criminal behavior; ...."

thought of it, and, if so, I wish you would think about it now as I work my way to you. Which one of those do you personally feel that you are?

"Do you feel like a person should be sent down there to punish them for what they have done, to deter others by making an example of them or to try to help them so that they won't do it again, to rehabilitate? Now, I am going to ask you individually as I go down the row which you feel you are."

The first juror was then asked, "With regard to my question of incarceration, Mr. Robertson, do you consider yourself a believer in the theory of deterrents [sic], punishment, or rehabilitation?" The prosecutor objected to the question as being outside the scope of voir dire. He also stated that the trial court "was not going to instruct the jury on any part of that." The trial court sustained the objection.

The appellant's counsel was subsequently told by the trial court that he would not be permitted to make similar inquiries of the remaining members of the venire. The trial court noted that the appellant's counsel excepted to that ruling with regard to each member of the panel.

In *Mathis v. State*, 576 S.W.2d 835, 836–837 (Tex.Cr.App.1979), we stated:

"The right to be represented by counsel, guaranteed by Article 1, Section 10 of the Texas Constitution, encompasses the right of counsel to question the members of the jury panel in order to intelligently exercise his peremptory challenges. [citations omitted] The trial court, in its sound discretion, can and should control the voir dire examination of the venire; however, the permissible areas of questioning the panel in order to exercise peremptory challenges are broad and cannot be unnecessarily limited. [citations omitted]

"... When the contention is that the trial court erred in denying a challenge for cause, no reversible error is shown unless the defendant exhausted his peremptory challenges and one or more objectionable juror sat on the jury. However, when the question is asked for the purpose of exercising peremptory challenges, the test for injury is entirely different. If the question is proper, an answer denied prevents intelligent use of the peremptory challenge and harm is shown. [citation omitted] As was stated in *Mathis v. State* [167 Tex.Cr.R. 627, 322 S.W.2d 629 (1969)], '... it is immaterial how the jurors would have answered the question, for, whatever their answers, the appellant was entitled to know their answers in order to enable him to exercise his peremptory challenges.'"

Since the appellant entered a plea of guilty, the only issue for the jury to determine was the appellant's punishment. The jury could have assessed as punishment a term of imprisonment for life or for any term of not more than 99 years or less than 5 years and, in addition, could have assessed a fine not to exceed $10,000.[2] Within that punishment range, the jury was free to exercise its discretion without guidance from the court. Its ultimate decision depended upon reaching a consensus based upon the personal views of the individual jurors. The appellant was entitled to know what those views were in order to intelligently exercise his peremptory challenges.

We hold that the question asked by the appellant concerning the punishment philosophies of the jurors was a proper question. It was, therefore, an abuse of discretion for the trial court to prevent the appellant from asking it.

The judgment is reversed and the cause remanded.

---

2. V.T.C.A., Penal Code, Sec. 12.32, Sec. 12.-42(b), Sec. 30.02.