**Clayton Allen MADDUX, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 875–92.**

Court of Criminal Appeals of Texas, En Banc.

June 9, 1993.

Rehearing Denied Oct. 6, 1993.

Michael B. Charlton, on appeal only, Brian C. Wice, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and Karen A. Clark and Joan Campbell, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Jeffery Van Horn, Asst. State's Atty., Austin, for the State.

OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MALONEY, Judge.

A jury convicted appellant of murder and assessed punishment at thirty (30) years imprisonment. TEX.PENAL CODE ANN. § 19.02. In a partially published opinion, the First Court of Appeals affirmed with one justice dissenting. *Maddux v. State*, 825 S.W.2d 511 (Tex.App.—Houston [1st Dist.] 1992). We granted appellant's petition for discretionary review to determine whether our holding in *Nunfio v. State*, 808 S.W.2d 482 (Tex.Crim. App.1991) is applicable to nontestifying witnesses such as deceased victims.[1] We hold that it is.

During the voir dire examination, the trial judge informed the venire members that the applicable range of punishment was a minimum of five (5) years probation to a maximum of life imprisonment and a $10,000 fine. Defense counsel unsuccessfully attempted to ask the venire if they could consider probation in a murder case where the deceased was a child:

[Defense Counsel]: Now then, we're not talking about any particular case. It

---

1. We also granted review to determine whether the court of appeals erred in its analysis of the admissibility of extraneous offenses. Because we will reverse and remand for a new trial on appellant's first ground for review, we will not address the extraneous offenses issue.

would be improper to do that. But in a hypothetical case where there was a murder conviction and a child had died, how many of you would still be able to consider probation?

[Prosecutor]: I object as being an improper—

THE COURT: Sustained, committing the jury to specific facts.

[Defense Counsel]: In a hypothetical situation assuming that fact and that fact alone, everything else was the same, the only fact that's different is that a child died, how many of you would still be able to consider as little as five years probation?

[Prosecutor]: I object as being an improper question, asking the jury to commit themselves to specific facts in a case.

THE COURT: Sustained.

[Defense Counsel]: I'd like for the record to reflect I would like to ask that question of each and every juror.

THE COURT: It's—the ruling stands.

The deceased in this case was approximately two and one-half years old. The First Court of Appeals held that the trial court did not abuse its discretion in preventing defense counsel from asking the venire members questions regarding a victim's status as a child. Appellant argues that the victim's status as a child is a proper area of inquiry just as questions regarding the victim's status as a nun were proper in *Nunfio*.

In *Nunfio* the trial court prevented defense counsel from inquiring whether the venire could be fair and impartial in a hypothetical aggravated sexual assault where the victim was a nun. The victim testified at trial that "she was a Roman Catholic and a 'member of [the] Ursuline Order which is a congregation of religious women in the Catholic Church.'" *Nunfio*, 808 S.W.2d at 483. This Court held that the question was proper citing *Abron v. State*, 523 S.W.2d 405 (Tex. Crim.App.1975) (trial court erred in refusing to allow defense counsel to inquire about potential racial bias towards a rape victim

who was of a different race than the defendant) and *Hernandez v. State*, 508 S.W.2d 853 (Tex.Crim.App.1974) (trial court erred in refusing to allow defense counsel to inquire about potential bias in favor of a witness who was also a police officer).

Here, the Court of Appeals attempted to distinguish *Nunfio*, as well as *Abron* and *Hernandez*. The court reasoned that in each of those cases the defense counsel sought to elicit potential bias regarding a complainant who was also a witness:

> If the present case had involved an aggravated sexual assault on a child, or some other offense in which the child complainant was a prospective *witness*, then defense counsel would have been entitled to question the venire members concerning bias for or against the child witness.

*Maddux*, 825 S.W.2d at 515 (emphasis in original). Justice O'Connor dissenting noted that:

> [n]othing in *Nunfio* supports the majority's holding that the nun's role as a witness (rather than her role as a victim) was the issue. Under the majority's analysis, a defendant may question the venire about its potential bias for or against a person who will be a witness, but not about the venire's bias for or against a person who was the victim.

*Id.* at 517 (O'Connor, J., dissenting).

We agree with Justice O'Connor; nothing in *Nunfio* distinguishes between victims who testify and those who do not. While it may be true that the police officer's status as a witness was significant in *Hernandez*, the complainant's status as a victim was the controlling factor in both *Abron* and *Nunfio*. Indeed, the question in *Nunfio* was proper because it "sought to determine potential bias or prejudice in favor of the *victim* by virtue of her vocation." *Nunfio*, 808 S.W.2d at 484 (emphasis added). Similarly, the question sought to be asked in this case was proper because it sought to elicit potential bias in favor of the deceased's status as a child.[2] The credibility of a complainant as a

---

2. A veniremember's complete inability to consider the full range of punishment (including probation in a murder case when the defendant has

not been convicted of any prior felony) would render the veniremember unfit for jury service. TEX.CODE CRIM.PROC.ANN. art. 35.16(b)(3) and

witness is not at issue here; we are merely reaffirming our holding in *Nunfio* that defense counsel is entitled to discover a venire-member's bias in favor of the complainant's status, *e.g.*, as a nun in *Nunfio*, or in this case, as a child.

The State argues that the question was an impermissible attempt by defense counsel to commit the venire to a particular sentence given particular facts.[3] *Saunders v. State*, 780 S.W.2d 471, 476 (Tex.App.—Corpus Christi 1989), *rev'd on other grounds*, 840 S.W.2d 390 (Tex.Crim.App.1992). We disagree.

In *Saunders*, the trial court had previously informed the venire of the victim's age when defense counsel attempted to ask the venire whether they could give that particular defendant probation even though that particular victim was a five month old child. The Thirteenth Court of Appeals held that the question was an improper attempt to commit the venire to a specific verdict given specific facts. Here, the venire was not aware of the deceased's age or even that the deceased was a child, defense counsel did not mention the facts of this case, and he did not specifically refer to appellant or to the deceased.

We emphasize, as does Judge Campbell in his concurring opinion, that we are not in any way abrogating the long standing rule prohibiting counsel from committing the venire-members to a certain verdict given particular facts. *See, e.g., Allridge v. State*, 762 S.W.2d 146, 162–64 (Tex.Crim.App.1988), *cert. denied*, 489 U.S. 1040, 109 S.Ct. 1176, 103

L.Ed.2d 238 (1989); *White v. State*, 629 S.W.2d 701, 706 (Tex.Crim.App.1981), *cert. denied*, 456 U.S. 938, 102 S.Ct. 1995, 72 L.Ed.2d 457 (1982); *Williams v. State*, 481 S.W.2d 119, 121 (Tex.Crim.App.1972); *Saunders*, 780 S.W.2d at 476.

■ We hold that the trial court abused its discretion when it prevented defense counsel from asking his question. The denial of a proper question during voir dire examination is always reversible error; it is not subject to a harm analysis under TEX. R.APP.P. 81(b)(2). *Nunfio*, 808 S.W.2d at 485. Accordingly, we reverse the judgment of the Court of Appeals and remand this cause to the trial court for a new trial.

BAIRD, J., not participating.

MILLER, Justice, concurring.

While I agree with Judge Campbell's analysis that today's majority opinion should not be read to abrogate the rule which seeks to prevent attorneys from committing prospective jurors to a particular verdict, and while it seems that our analysis must, necessarily, proceed on a case-by-case basis, I write separately to emphasize that what little amount of guidance that has been provided in the area of peremptory strike analysis should be explicated in order to aid practitioners, and also that the law should allow more extensive questioning than it now does.

The concept of allowing a defendant's counsel to effectively and intelligently exer-

(c)(2). We do not decide today whether the question sought to be asked here, if answered negatively, would have been sufficient grounds for a challenge for cause. That question is not before us. However, the trial court should have allowed defense counsel the opportunity to discover potential bias in the veniremembers in order that he might intelligently exercise his peremptory challenges.

3. The State through its Prosecuting Attorney, has also filed a post-submission brief responding to questions raised during oral argument before this Court on January 14, 1993. Judge Campbell asked appellant's counsel, "Can you take what would ordinarily be a question that solicits a commitment and turn it into something else by just making it a hypothetical question?" Appellant's counsel responded affirmatively, and then stated that a question such as "would you assess

five years probation in this case" would be an attempt to commit the venire to a specific verdict given specific facts; whereas, a question resembling "in a hypothetical case, could you assess probation" would be proper. Apparently, appellant's counsel found a significant difference between phrasing the question in terms of "would you" and "could you." The latter being proper. We disagree.

The State waived argument, but in its post-submission brief it downplays such a distinction. Obviously, there are no magic words that amount to a commitment; for instance, questions phrased as either "could you *consider*," or as in this case, "would you *consider*" do not commit the venire. As Judge Clinton pointed out during argument, "to consider" is not a commitment because the jury is supposed to consider the applicable range of punishment.

cise peremptory challenges is one of great importance under the Texas Constitution.[1] Unlike the mandated list of challenges for cause found in article 35.16 of the Texas Code of Criminal Procedure, practically no instruction is provided for counsel seeking to fruitfully assert, via the use of peremptory strikes, a client's rights. *Cf.* Tex.Code Crim. Proc.Ann. art. 35.16 (Vernon supp.1992); *and Butler v. State,* 830 S.W.2d 125, 130 (Tex.Crim.App.1992) (Article 35.16 is a complete list of challenges for cause). With few exceptions, counsel is permitted to question venirepersons on virtually any area which will aid in the intelligent use of peremptory challenges, as long as the trial court considers the question proper. "A question is proper if its purpose is to discover a juror's views on an issue applicable to the case." *McCarter v. State,* 837 S.W.2d 117, 121 (Tex. Crim.App.1992) (*quoting Ex Parte McKay,* 819 S.W.2d 478, 482 (Tex.Crim.App.1990) (plurality) *and citing Nunfio v. State,* 808 S.W.2d 482, 484 (Tex.Crim.App.1991)); *Shipley v. State,* 790 S.W.2d 604, 608 (Tex.Crim. App.1990); *Allridge v. State,* 762 S.W.2d 146, 163 (Tex.Crim.App.1988); *Smith v. State,* 703 S.W.2d 641, 644 (Tex.Crim.App.1985). Thus, "[t]he trial court must not restrict proper questions which seek to discover a juror's views on an issue applicable to the case." *Id.* at 121–22 (*citing Boyd v. State,* 811 S.W.2d 105, 118 (Tex.Crim.App.1991) (trial judge may impose reasonable time limits on *voir dire*), *cert. denied, sub. nom. Boyd v. Texas,* —— U.S. ——, 112 S.Ct. 448, 116 L.Ed.2d 466 (1991)); *but cf. Woolridge v. State,* 827 S.W.2d 900, 905–06 (Tex.Crim.App.1992) (improper for trial judge to impose restrictions based on the mere possibility that the otherwise proper question might lengthen the *voir dire* process).[2] Generally, a trial court reversibly errs when it denies a proper question because the denial interferes with a defendant's intelligent exercise of peremptory

challenges. *Smith v. State,* 513 S.W.2d 823, 826 (Tex.Crim.App.1974).

In *Smith,* the trial court refused the defendant's request to question twelve prospective jurors whether, following a guilty verdict, each juror could, individually, "consider granting a two year probated sentence." *Id.* Harm there was apparent "[s]ince a question attempting to elicit grounds for a challenge for cause is necessarily also eliciting 'grounds' for peremptory challenges . . ., the harm in preventing answers to any proper question is the inability to intelligently make use of the peremptory challenges." *Id. (citing Meador v. State,* 94 Tex.Crim. 608, 253 S.W. 297 (1923) *and Ortega v. State,* 462 S.W.2d 296 (Tex.Crim.App.1970)). Thus, "[t]he permissible areas of interrogation to determine the use of peremptory challenges are broad and not to be unnecessarily limited." *Id.*

Likewise, harm is presumed where the defendant is prevented from positing a question to the whole venire or "during the individual voir dire of twelve separate venireman [sic]." *Gardner v. State,* 730 S.W.2d 675, 690 n. 9 (Tex.Crim.App.1987), *cert. denied,* 484 U.S. 905, 108 S.Ct. 248, 98 L.Ed.2d 206 (1987). But where the question is posed to a single venireperson on a special venire, harm will not occur unless the defendant uses a peremptory strike as a result of the disallowed question, exhausts all allotted peremptory challenges in the course of *voir dire,* requests additional peremptory challenges and is denied. *Id.* Again, the key question to be asked is whether or not the query touches on an area associated with the case.

Despite the uniqueness of each case and *voir dire,* some patterns regarding the propriety of questions have emerged. For instance, as both the majority opinion and Judge Campbell's concurrence make clear, it

---

1. The right to ask questions of panel members is included in the right to counsel and is of constitutional magnitude in this State. *Graham v. State,* 566 S.W.2d 941 (Tex.Crim.App.1978) (*citing Abron v. State,* 523 S.W.2d 405 (Tex.Crim. App.1975)); *see also De La Rosa v. State,* 414 S.W.2d 668 (Tex.Crim.App.1967) (the right to propound questions on voir dire in order to intelligently exercise peremptory challenges is of the greatest importance); *Mathis v. State,* 167

Tex.Crim. 627, 322 S.W.2d 629, 631 (Tex.Crim. App.1959) (Article I, Section 10 of the Texas Constitution guarantee of right to counsel encompasses the right to question members of the jury panel).

2. For a discussion of permissible and impermissible restrictions on defendant's voir dire, *see Woolridge* at 904.

is inappropriate for counsel to seek a potential juror's commitment to judgment prior to trial: questions asked of a venireperson must not be designed so as to attempt to commit that person to a particular verdict in advance of trial. But, this is not to say that the facts of the case are so taboo that counsel must completely avoid them, and *Nunfio, supra,* was an attempt to provide an example of when a prospective juror's attitudes toward important facts can be explored. Today's opinion by the majority does nothing more than extend the rule of *Nunfio* to another victim status, here a deceased child. It is important to allow counsel the ability to uncover potential bias or prejudice for or against the defendant or witnesses, for or against a theory to be propounded or in favor of or opposed to a party, and this Court has so held on many occasions.

I will basically limit my analysis to peremptory questions. A peremptory challenge must be viewed as a sub-species of the challenge for cause because the challenge for cause is established upon the basic requisites necessary for a venireperson to become a juror. If qualified to be a juror under our statutes, the analysis then rises from the base level previously acted upon to the vagaries of individual personalities and attitudes. An area as subjective as this and with permissible boundaries far more expansive than the limited subjects associated with challenges for cause requires greater latitude in the manner and form of questioning (than does questioning for cause purposes), in order that counsel may fully champion the client's cause.

### Proper Peremptory Questions

Historically, some questions touching on marginal areas have been considered proper. Like the present case, it was proper for counsel in *Morrow v. State* to explore the venire panel's prejudice or bias against a certain class of witness. 56 Tex.Crim. 519, 120 S.W. 491, 492 (1909). There, State's counsel correctly informed the potential jurors that a private detective's testimony stood in the same position as that of any other witness, and that corroboration thereof would not be necessary. *Id.* at 492. Counsel then elicited answers, over the defense's objection, on whether or not they had any attitude or prejudice against the testimony of a private detective. *Id.* Defense counsel objected to the questioning as improper, and, although the matter touched directly upon the venire's attitude on a witness in the case, this Court found the question proper as aiding counsel in the intelligent use of peremptory strikes. *Id.* Today's opinion, and our prior opinion in *Nunfio,* are nothing more than extensions of this well-established reasoning.

In *Abron v. State,* the appellant was an african-american and the rape victim a caucasian, and appellant's counsel attempted to question the venire panel on whether such a fact would "cause [any veniremember] to have a bias or prejudice against the defendant?" 523 S.W.2d at 406–07. The trial court there disallowed the question, and this Court reversed stating that "the more specific questions regarding racial prejudice would have been valuable to appellant because they could have furnished a basis for the intelligent exercise of peremptory challenges. Deprivation of this valuable right is a showing of injury sufficient to necessitate reversal." *Id.* at 409 (*citing Fendrick v. State,* 39 Tex. Crim. 147, 45 S.W. 589 (1898)).

Racial prejudice was also the touchstone in *Plair v. State,* 102 Tex.Crim. 628, 279 S.W. 267 (1925). As with *Abron,* the defendant was an african-american who committed a crime against a caucasian, here theft. *Id.,* 279 S.W. at 268. Counsel for Plair had wished to individually question the jurors, specifically asking "whether [the veniremembers] had any prejudice against the defendant because he is of the negro race, and if they would each try the case and give him the same fair and impartial trial as they would a white man similarly charged." *Id.,* 279 S.W. at 268. Reasoning that denying appellant's request deprived him of a substantial right (that of full representation and the intelligent exercise of peremptory challenges), this Court held that although the measure would lengthen *voir dire,* it was error not to allow both the manner of interrogation requested and the question. *Id.,* 279 S.W. at 269.

Ironically, in *Reich v. State* appellant's attorney believed that several of the venire-members were members of the Ku Klux Klan and sought to question the panel on whether anyone was a member, but not for the purpose of revealing race bias. 94 Tex.Crim. 449, 251 S.W. 1072, 1073 (1923). The attorney explained to the trial court "that, according to his information, many of the criminal cases pending in Wood county had been discussed by the members of that organization and speeches had been made in their lodge rooms insisting upon convictions in criminal cases, and that, for the reasons stated, he feared that prejudice had been created against him and against his case...." *Id.* The trial court refused the request, but this Court reversed on appeal because "[t]he information which was called for was certainly calculated to have enabled appellant to intelligently exercise his peremptory challenges." *Id.* As the case does not indicate whether appellant belonged to any particular ethnic or religious group, it follows that it was the potential bias or prejudgment of the case which prompted reversal.

Reviewing a case in which four police officers were to figure prominently in the State's prosecution of a burglary, this Court found reversible error in the trial court's refusal to allow a question seeking bias in favor of law enforcement. *Trevino v. State*, 572 S.W.2d 336, 337 (Tex.Crim.App.1978). Trevino's counsel sought to ask a prospective juror whether "merely because [a witness] is a police officer, do you think you would pay or give more weight to his testimony than someone who was not a policeman?" *Id.* Here, the Court reasoned "knowing whether or not each of the prospective jurors would give greater weight to the testimony of police officers ... would have enabled appellant's counsel to exercise more intelligently his peremptory challenges." *Id.* The question, therefore, "did not exceed the proper scope of *voir dire*," and harm was shown. *Id.*

At a pre-trial hearing where competency to stand trial is an issue, it may be proper to allow limited questioning designed to discover whether prospective jurors had an opinion regarding the defendant's guilt or innocence, and whether the opinion would be an influ-ence on the competency trial. *See Brandon v. State*, 599 S.W.2d 567 (Tex.Crim.App.1979) (On Original Submission), *cert. granted & J. vacated*, 453 U.S. 902, 101 S.Ct. 3134, 69 L.Ed.2d 988 (1981). However, such a decision will, naturally, depend in large part on the facts necessary to a determination of competency.

On the opposite end of the spectrum, where only punishment is at issue, it may also be proper to plumb the depths of prospective jurors' feelings on various punishment theories. *Powell v. State*, 631 S.W.2d 169, 170 (Tex.Crim.App.1982). In *Powell*, defense counsel explained that there were three major schools of thought on the issue of punishment: (1) rehabilitation, (2) punishment, and (3) deterrence. *Id.* at 169. He then attempted to ask each venireperson individually which philosophy most closely matched their own. *Id.* at 170. Upon the State's objection, the trial judge did not permit inquiries of that type, and we held that the question was proper and disallowing it was an abuse of discretion sufficient to merit reversal. *Id.*

## Improper Peremptory Questions

As mentioned above, discretion over the propriety of *voir dire* questioning must be left with the trial court and will be reviewed on a case-by-case basis. However, some areas have been expressly made off-limits.

In *Caesar v. State*, appellant's counsel attempted to question the potential jurors on a related area: how they would act as a juror. 135 Tex.Crim. 5, 117 S.W.2d 66 (1938). The desired question was as follows:

Mr. Juror, if chosen as a juror in this case, will you or can you go into the jury box and hear the evidence and charge of the court and the argument of counsel, and retire to the jury room with other jurors, and after deliberations, return to the jury box and render a verdict that will be your own verdict based upon your analysis of the evidence and upon the charge of the court, such verdict being your's [sic] *without regard to what the verdict or conclusions of the other jurors associated with you in the trial of this case?*

*Id.,* 117 S.W.2d at 68 (emphasis added). The trial court, perceiving the emphasized portion above as a misstatement of the juror's role, sustained the State's objection to the question, and this Court agreed noting that "[t]he purpose of the law is to allow free discussion and interchange of opinions among jurors in order that proper verdicts may be rendered." *Id.*

In a trial for driving while intoxicated (DWI), the trial court refused to allow counsel to ask whether "[a]t present do you engage in any form of athletics, particularly bowling?" *Dworaczyk v. State,* 172 Tex. Crim. 142, 354 S.W.2d 937, 938 (1962). Failing to perceive what possible relevance such an obtuse question could have to the case, and given that trial counsel did not indicate how the potential jurors would have responded, the trial court refused to allow the question. *Id.* In so doing, the trial judge did not abuse his discretion. *Id.* Thus, without facts indicating that an activity was part of the facts of the case, a question of this nature is not proper under the record because it is wholly irrelevant to the selection of jurors, and the trial court does not err in limiting its proffer.[3]

Nonetheless, some questions which in past years were considered improper should not be so considered under our modern approach to the law. For instance, in *Carpenter v. State,* this Court reviewed a murder case in which the deceased was the defendant's father-in-law, and the murder was a result of a family argument. 129 Tex.Crim. 397, 87 S.W.2d 731 (1935) (On Motion for Rehearing). Appellant was not allowed, in that case, to ask the question: "[i]f you were on trial for the offense of murder, would you be willing to be tried by a juror who had the same attitude of mind toward you as you now

have with reference to this defendant?" *Id.* at 735. Reasoning that, in contrast to *Plair, supra,* no error was presented because the question sought not to explore the juror's bias against the defendant, but, rather, asked for a response irrelevant to the exercise of a peremptory strike, it was held that the question was improper and there was no harm in its disallowance. *Id.; see also Gradney v. State,* 129 Tex.Crim. 445, 87 S.W.2d 715, 716 (1935) (in trial of african-american defendant for robbery of a caucasian woman, no error to disallow question on whether, were the roles reversed, jurors would want defendant to sit on their case); *cf. Plair,* 279 S.W. at 268. However, two proper purposes for the disallowed questions immediately spring to mind, *viz:* (1) trial counsel was, in fact, seeking to uncover bias directed towards the defendant, and (2) trial counsel in *Gradney* was additionally seeking out possible racial bias. Perhaps given the factors surrounding those cases counsel could have provided even more explanations for those questions. But only one legitimate purpose for asking a question is necessary and, therefore, the trial judges' actions in those cases were inconsistent with counsel's effective exercise of peremptory strikes. The questions should have been permitted.

Almost eighty years ago, this Court approved of a trial court's disallowance of a hypothetical question designed to explore bias against a crime rather than bias against a defendant. *Merkel v. State,* 75 Tex.Crim. 551, 171 S.W. 738 (1914). There, a 16 year old girl was raped by a 23 year old man. *Id.,* 171 S.W. at 738–40. Appellant's attorney, however, had attempted to ask "whether [the potential jurors] would have bias or prejudice against a 35 year old man having sexual

---

**3.** While this case seems to stand for the proposition that an "irrelevant" question can be disallowed, in actuality it is more likely that the trial court's motivation was managing *voir dire,* and in any event we will never know because the disallowed question is presented apart from those allowed and independent of meaningful analysis. As noted *ante,* the trial court is allowed to place some reasonable time restrictions on *voir dire. Boyd,* 811 S.W.2d at 118; *cf. Woolridge,* 827 S.W.2d at 905–06. *Dworaczyk* is suggestive of the problem with limiting questioning of the panel. In the context of the full *voir dire,* a

question such as was disallowed there, though useful in counsel's eyes, might have appeared pointless and designed solely to lengthen the process of jury selection. Conceivably, counsel for Dworaczyk was attempting to uncover some attitude shared by bowlers. *See* fn. 5, *post.* Or perhaps the defendant was a bowler and counsel was seeking jurors with a common interest. Whatever the initial motivation in wanting to ask a question, it should be clear that, unless the trial court perceives absolutely no utility, it would often be prudent to permit its asking.

intercourse with a 16 or 17 year old girl[,]" and this Court found no error because the question was "not for the purpose of showing, as stated, any bias or prejudice against appellant, nor that they could not try him in this case impartially, but were directed towards their bias, etc. against the crime . . . ."

In a DWI trial, appellant's attorney was not allowed to ask a prospective juror questions relating to personal drinking habits. *Densmore v. State,* 519 S.W.2d 439, 440 (Tex. Crim.App.1975). Lacking a formal record, appellant's Bill of Exception stated that " 'the Court did permit interrogation of the jurors regarding any moral opposition they might have to the drinking or the consumption of alcohol and the type of questions relating to the personal drinking habits of individual jurors.' " *Id.* The Court considered the disallowed questions mere restatements of questions already allowed, but went on to find that even if the questions were sufficiently distinct, that because they did not relate to "personal prejudices or moral beliefs," no abuse of discretion occurred. *Id.* Forestalling questioning on that basis, however, was not, in my opinion, correct. Drinking was to be a fact in the case presented, therefore part of an "issue applicable to the case." So situated, a juror's personal drinking habits are as relevant to counsel's determination of whether or not to exercise a peremptory strike as any other personal factor, e.g., religious affiliation, club membership, political party association, general demeanor, posture, color of shirt, etc.; counsel most probably desired a panel of drinkers vis a vis teetotalers. Thus, the trial court erred, in my view, by not permitting the question.

Likewise, in an obscenity trial, this Court agreed with the trial judge's analysis that it was not proper for counsel to question venirepersons on their personal views regarding what constitutes obscene material. *Boyd v. State,* 643 S.W.2d 700, 705 (Tex.Crim.App. [Panel Op.] 1982). However, we held that counsel was able to adequately explore personal views on obscenity because the trial court allowed counsel to "ask numerous other questions in regard to what movies or literature each venireman had seen and whether the individual venireman considered such things to be obscene." *Boyd* at 705. Considering the questions that were allowed, it is difficult to imagine how counsel could have uncovered attitudes in any meaningful way because it is conceivable that certain members of the venire would never have been exposed to material that, while at first blush shocking, is nonetheless not obscene given contemporary community standards. *See generally, Miller v. California,* 413 U.S. 15, 24–25, 93 S.Ct. 2607, 2614–15, 37 L.Ed.2d 419 (1973). As such, I believe the disposition in *Boyd* erred by not permitting that appellant to separate, by effective use of peremptory strikes, those inclined toward the prurient from those preferring the pure.

In contrast, in *White v. State,* a trial court disallowed appellant's counsel's question attempting to ask a veniremember "if he would be unable to consider the penalty of confinement for life if it were proved that the defendant went into a store, 'attempted to rob it or robbed it,' aimed a pistol at a woman's head at short range and shot her, killing her instantly, and if the woman's husband testified to that." 629 S.W.2d 701, 706 (Tex.Crim. App.1981), *cert. denied,* 456 U.S. 938, 102 S.Ct. 1995, 72 L.Ed.2d 457 (1982). As the case was to develop, the foregoing summation would have been "an accurate statement of what the State's case would be." *Id.* Eventually, White's attorney was allowed to ask whether "the venire member could return a verdict of life in prison if it were proved that a defendant shot someone in the head in the course of committing a robbery." *Id.* There, we held "[t]here was no error in refusing to let the appellant ask a hypothetical question that was based on the facts peculiar to the case on trial. [Cite omitted]. In fact the question that was permitted had more details than the appellant was entitled to ask." *Id.*

It is difficult to differentiate *White* (and the other bad cases) from the cases mentioned above that deal with proper peremptory questions, today's holding, or our proper question decision in *Nunfio.* Clearly, there is no qualitative difference between the question White's trial judge permitted and that which was disallowed. The allowed question, as inferred by the statement that appellant

had asked a question with "more details than [he] was entitled to ...," was essentially the same as the disallowed question; the only meaningful distinction between the two rests on the number of facts presented, i.e., a quantitative difference. Instead, the analysis should have focused upon the motivation of trial counsel in asking the question, e.g., was the question necessary to expose bias in favor of a husband testifying as an eyewitness to his wife's murder? If such a reason existed for appellant's question, then the analysis should proceed to just which facts were necessary to counsel's meaningful exercise of strikes without regard to the *quantity* of facts presented. Revisiting *White* in this manner, the initial question appears to be a complete recitation of the facts of the case, and therefore inadmissible. However, the spectre of the sympathetic witness is raised, and thus a legitimate reason would have existed for allowing the amount of detail. Nevertheless, defense counsel did not rely on this justification, and, indeed, the allowed question is revealing: it was formed as an attempt to bind a potential juror to a verdict. Thus, neither question would have been proper.

### Analysis of Decisions Involving Proper vs. Improper Questions

As the cases above clearly illustrate, the law presently seems to require that on *voir dire* trial counsel should not delve too deeply into the facts of the case-at-bar. On the other hand, questioning for peremptory challenge purposes should be far more open because "[a] question is proper if its purpose is to discover a juror's views on an issue applicable to the case." *McCarter,* 837 S.W.2d at 121; *Shipley,* 790 S.W.2d at 608; *Allridge v. State,* 762 S.W.2d at 163; and *Smith,* 703 S.W.2d at 644. The concept of limiting questioning for peremptory challenges is tempered somewhat *if,* for purposes of intelligently exercising peremptory challenges,

questions on the peculiar facts of the case are necessary to elicit responses on juror bias or prejudice and no other means will suffice. Moreover, in all cases, questions must not be formulated so as to attempt to bind a potential juror to a verdict or punishment should particular facts be proven. In all other areas, questioning must be analyzed by the trial court at the time made and with an eye towards allowing counsel to effectively utilize *voir dire* in the client's best interest by asking proper questions. For instance, the prosecution, particularly in light of *Batson,*[4] should be allowed to fully question potential jurors to seek out actual "group bias."[5] The late Judge Teague noted by way of an elaborate example that a prosecutor may exercise a peremptory strike on a person "not because of race but because of some nonsensical race-neutral reason, although it is likely [the prosecutor] will use a non-race related reason to peremptorily strike the juror." *Whitsey v. State,* 796 S.W.2d 707, 737 (Tex. Crim.App.1989) (On State's Motion for Rehearing) (Teague, J., concurring). Stated another way, "we are often guilty of judging one by first appearances or first impressions." *Id.* As our opinions in *Keeton* and *Whitsey* make clear, however, the law requires that prosecutors avoid this all too human reaction and look deeper. *Keeton v. State,* 749 S.W.2d 861, 870 (Tex.Crim.App. 1988); *Whitsey,* 796 S.W.2d at 728. Thus, questioning should be broad enough that resort to reflexive decisions based on gut instincts is ameliorated.

Despite the historic and somewhat restrictive position of the law in this area, it is my belief that more expansive questioning should be permitted. Assuming that the question is a "proper" one, the focus of our analysis must then be on the binding or contractual obligation of a potential juror to a specific verdict or punishment based on particular facts. Thus, the actual wording of the question is, in my view, irrelevant. Questions that cannot be seen as an attempt to so

---

4. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

5. "Group bias" refers to perceived bias common to all members within a subset of individuals. This perceived form of bias may result from a person's ethnicity or race, from an affiliation with an organization, religion or association, or from virtually any other setting in which people find common identification. Thus, the assumption proceeds, are all educators, musicians, or democrats liberal, all professionals, bankers, or republicans conservative. In short, stereotyping.

bind should be permitted, regardless of the semantics used or the length of the question.[6] This must be so because, as the law exists today, an attorney would, where necessary, be allowed to question using some facts, indeed facts which may prove quite important to the case. It does not, therefore, seem reasonable to disallow a question solely because a certain quantum or type or facts are touched upon; the law in this area should be more flexible, and past cases which impose needless barriers to counsel's effective and intelligent use of peremptory strikes should be disavowed.[7]

With these comments, I concur in the majority opinion of the Court.

CAMPBELL, Justice, concurring.

The issue before the Court is whether two questions propounded to the venire panel by appellant's trial counsel constituted an effort to commit the veniremembers to a specific set of facts. I wholly agree with the majority opinion that the questions involved, in no way sought to commit the veniremembers to a certain set of facts. I also agree that our holding in *Nunfio v. State,* 808 S.W.2d 482 (Tex.Cr.App.1991) applies to both testifying and nontestifying witnesses (and in cases such as this, victims). I write separately, however, to emphasize that our holding today should not be interpreted as an abrogation of the rule prohibiting attorneys from attempting to commit prospective jurors to a certain verdict based upon a particular set of facts. See *Williams v. State,* 481 S.W.2d 119, 121 (Tex.Cr.App.1972).

Whether a certain question constitutes an effort to commit the venireperson to a verdict based upon particular facts will depend upon the manner in which the question is phrased and/or the amount of detail placed in the question. A brief review of some of this Court's past opinions pertinent to this issue provides illustrative examples of what constitutes both proper and improper questions.

In *Alldridge v. State,* 762 S.W.2d 146 (Tex. Cr.App.1988), cert. denied, 489 U.S. 1040, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989) and *White v. State,* 629 S.W.2d 701 (Tex.Cr.App.1981), cert. denied, 456 U.S. 938, 102 S.Ct. 1995, 72 L.Ed.2d 457 (1982), this Court was faced with questions which clearly constituted improper attempts to commit the prospective jurors to a particular position.

In *Alldridge* the issue arose in an appeal from a capital murder conviction. At trial, appellant's attorney asked a prospective juror, "Tell me what type of cases you think should always result in the death penalty?" 762 S.W.2d at 164. This Court held that appellant "made no showing that the question he sought to ask was proper." *Id.* It is clear to me that asking prospective jurors to state which cases would *always* cause them to vote a certain way constitutes an improper attempt to commit the prospective jurors to a certain position regarding particular sets of facts.

In *White,* the issue also arose in an appeal from a capital murder conviction. During voir dire,

> [t]he appellant asked the venire member if he would be unable to consider the penalty of confinement for life if it were proved that the defendant went into a store, "attempted to rob it or robbed it," aimed a pistol at a woman's head at short range and shot her, killing her instantly, and if the woman's husband testified to that.

629 S.W.2d at 706. The trial court sustained the State's objection, but "permitted [appellant] to ask if the venire member could return a verdict of life in prison if it were proved that a defendant shot someone in the head in the course of committing a robbery." *Id.* This Court held not only that no error had been committed by refusing to allow the appellant to ask "a hypothetical question . . . based on the facts peculiar to the case," but also that "the question that was permitted

---

**6.** Because they would not be "proper," questions designed as mere recitations of the indictment, as opposed to those designed with a view towards exposing a venireperson's attitudes toward the specific statute, would continue to be impermissible.

**7.** Specifically, *Boyd, White, Densmore, Carpenter, Gradney* and *Merkel,* all *supra.*

had more details than the appellant was entitled to ask." *Id.*

While our opinions in *Allridge* and *White* illustrate questions that were clearly improper, the opinion in *Hernandez v. State*, 508 S.W.2d 853 (Tex.Cr.App.1974) provides a good example of a proper question that the trial court erroneously prohibited the appellant from asking. In *Hernandez*, appellant wanted to ask the venire, "Is there any member of the panel who, regardless of what the evidence showed in any case, could not believe that a police officer was telling a willful falsehood from the witness stand?" 508 S.W.2d at 854. In concluding that the question was proper, we contrasted our prior holding regarding a similar question[1] propounded in *Hunter v. State*, 481 S.W.2d 137 (Tex.Cr.App.1972). In *Hernandez*, this Court stated that

> [o]ur opinion [in *Hunter*] emphasized that the question was improper *as framed,* and by this emphasis clearly implied that such a question would not be *per se* improper. The question [in *Hunter*], by its specificity, clearly required a prospective juror to commit himself in answering it. The question in the instant case, however, merely inquires of a prospective juror, in general terms, whether he could conceive of the possibility that a police officer-witness might lie from the stand.

*Id.* (Emphasis in original).

Likewise in this case, appellant's questions inquired in general terms whether the veniremembers could consider probation where the murder victim was a child. Unlike the situation in *Allridge*, appellant herein in no way tried to commit the veniremembers to a verdict that they would "always" follow. Unlike the situation in *White*, appellant did not go into any specific detail about the victim or the manner in which the crime was committed. Also, asking the veniremembers to "consider" a certain course of conduct in no way constitutes an attempt to commit them to follow that course of conduct.

Finally, I have no doubt that trial courts will continue to be faced with situations where reasonable minds could differ as to whether a question is proper or improper. Unfortunately, I can conceive of no bright line rule for determining when a question contains too much detail or seeks to commit the venire to a particular answer. Due to the very nature of the issues involved, these decisions will require review on a case-by-case basis.

With these comments, I concur in the majority opinion of the Court.

McCORMICK, P.J., and WHITE, J., join.

---

1. In *Hunter*, the appellant sought to ask the venire, "By virtue of your personal knowledge of the truthfulness of Mr. Booe, would you place greater credence on his testimony than you would on someone who contradicted him whom you did not know?" 481 S.W.2d at 138.